CAREY BEAVER ET AL. *v.* ALICE H. CRUMP ET AL.

1. ADOPTION OF INFANTS. *Code of* 1880, § 1496. *Code* 1892, § 492.

Under code of 1880, § 1496, providing for the adoption of infants, if the child of another be adopted, such child does not become the heir of petitioner, unless heirship be one of the gifts, grants, or benefits proposed to be conferred upon the infant.

2. SAME. *Consideration. Res adjudicata.*

In such case, the effect of a final judgment of adoption cannot be avoided for want of consideration. The decree itself precludes such inquiry.

3. SAME. *Specific enforcement of right. Uncertainty.*

If the adoption proceedings provide, among other things, that the child shall receive, at petitioner's death, all property of petitioner not devised to others, the adopted child cannot claim anything, by way of specific enforcement of the decree, because of uncertainty as to the property.

FROM the chancery court of Clay county.

HON. BAXTER MCFARLAND, Chancellor.

The facts are fully stated in the briefs of counsel and the opinion of the court. The appellants, Carey Beaver *et al.*, were the complainants in the court below.

*G. A. Evans*, for appellants.

The demurrer to the cross bill, filed by Mrs. Alice H. Crump, presents the question as to the rights of Mrs. Crump to the property of Seth P. Pool, deceased. The facts, as developed by the record, are that, in 1887, Seth P. Pool instituted in the circuit court of clay county proceedings for the adoption of the appellee, who was then Miss Alice Hulsey, and a great niece of Seth P. Pool. The proceedings were had under § 1496 of code of 1880. The petition undertaking to "state in said petition what gifts, grants, bequests, or benefits he [the petitioner, Pool] purposes to make or confer upon said infant," as provided in the statute, declared that he purposed to devise to her his plantation, known as "The Sykes Place," and to devise and bequeath to her his other property that he should not devise or bequeath to others. The petition was granted, and the adopted child was adjudged to be entitled to all the benefit, and subject to all the duties and liabilities, conferred and imposed by § 1496 of the code. Shortly after this act of adoption, Seth P. Pool, by deed of conveyance, conveyed to Miss Hulsey the Sykes place. In 1896, Seth P. Pool died without having made any will or testament. Mrs. Crump claims, that by virtue of the act of adoption, the petition and order of the court, she is entitled to all the property of which he died seized or possessed. While the natural heirs deny this claim, and insist that the property of Pool, upon his death intestate, descended according to the statute of descent and distribution. This presents, in brief, the substantial question to be decided. The statute of Mississippi (see § 1496, code 1880) seems to be peculiar. I have been unable to find a similar statute, and, therefore, authorities on directly analogous case are not to be had. But it does seem that the application of a few elementary principles will solve the question. Upon the death of Pool, his property certainly descended to his next of kin, unless something had occurred to prevent the application of the legal rule. The elementary books teach us that property can be acquired

(1) by purchase (deed of conveyance as to realty or delivery of personal property); (2) by descent cast; (3) by last will or testament. Mrs. Crump does not claim by descent, nor by last will or testament, nor by deed of conveyance or delivery. So it is certain that she has no claim so far as the legal title is concerned.

It would be idle to argue that the papers executed for the purpose of adoption have none of the characteristics of either a deed or will, or that the legal title was in nowise affected by them. The only claim that Mrs. Crump can, with even plausibility set up, is, that while the legal title descended to the heirs at law, yet, by reason of some fact, it descended clothed with some trust for the benefit of Mrs. Crump. This claim is based on the idea that she has paid something or done something or parted with some consideration entitling her in equity to the property, and this she insists was the consent to the adoption. If we concede that such consent, or the consummation of the adoption would be a sufficient consideration, Mrs. Crump is confronted at the outset with the insuperable difficulty that her future acquisition of the property now involved was not the consideration of her consent to the adoption, for it is manifest that there was not and could not then be any such reasonable expectation of acquiring it as the law would recognize. There was no earthly promise or undertaking that she should have one cent beyond the Sykes place. And while Mrs. Crump might have indulged the hope that she might become owner of other property, or have expected a legacy or devise, yet such hope or expectation was necessarily based upon a reliance upon the generosity of Mr. Pool, and not upon any agreement or promise which could be enforced or upon which she was justified in relying as a legal obligation or a valid consideration for any act of hers. She is confronted, too, with the fact that, however much she expected to acquire other property (than the Sykes place) or however much such expectation may have influenced her conduct, or whatever may have been, at that time, the intention of Mr.

Pool, it was such a matter that no court can recognize or enforce. The supreme court of New York, speaking of such matters, says: "This principle does not embrace cases where services are rendered or other valuable consideration parted with in mere expectation of a legacy, and in reliance only on the testator's generosity. But there must be a contract, expressed or implied, stipulating for an agreed compensation, by way of legacy or devise." *Martin* v. *Wright*, 13 Wend., 460; *Bolman* v. *Overall*, 80 Ala., 455; *Wood* v. *Evans*, 55 Am. Rep., 411, 412.

Now, then, apply this well-settled principle. The promise was "to bequeath and devise." What? Anything certain? No. Anything which could induce the hope of any specific thing or amount? Certainly not. Nothing, save that which depended wholly on the generosity of Mr. Pool. The words are tantamount to "I will give you in my will what I see fit to give you—what I don't give some one else—and whether that shall be all I have or only one nickel, you must depend on my generosity.

It is manifest, from the very nature of things, that there was no legal right to consider Pool under any obligation to give anything at all (save the Sykes place, which has been given), nor any reason to do more than entertain a "hope," for the very language carries notice that "you can expect nothing definite, but only what my generosity shall prompt."

The supreme court of Alabama, speaking of the enforcement of contracts to make a will, where there is an agreement for a legacy, says: "The principle upon which courts of equity undertake to enforce such agreements, is referable to its jurisdiction over the subject of specific performance. It is, in the nature of a covenant, to stand seized to the use of the promisee, as if the promisor had agree to retain a life estate in the property, with remainder to the promisee in the event the promisor owns it at time of his death." In that case the agreement was to give to the promisee all the property the promisor owned at his death. *Bolling* v. *Overall*, 80 Ala., 456. In the case of

*Bolling* v. *Overall*, there was an agreement to give to Mrs. B. all the property owned by the promisor at her death, and a will to that effect was made; and the court says, that by such agreement the promisor renounces the right to make a will contrary to the agreement. In the case at bar, the right to make a will and do as the testator might see fit, and devise and bequeath to any person he pleased, was expressly reserved, so that all that Mrs. Crump could possibly rely on, was the generosity of the testator, and this case expressly, and it seems to me necessarily, declares, as does the authority from Wendell, and as is evidently and necessarily the rule, that the principle has no application, where there is nothing more than an expectancy, or a reliance on the testator's generosity. Indeed, it could not be otherwise, for the principle being "referable to the jurisdiction over the subject of specific performance." It is of the very essence of such jurisdiction that there must be a contract sufficiently definite for the court of equity, by its machinery, to enforce. To illustrate: Suppose, instead of the proposal to "devise and bequeath," the agreement had been to do something in the lifetime of Pool—*e. g.*, suppose he had said, "When I am seventy years old, I will, by deed, give away and convey my property, reserving what I see fit for my own use, giving and conveying what I see fit to my natural heirs, and in that deed I will give and convey to you the balance." Would it not be absurd to suppose that a court of equity could enforce such a contract or decree; that after seventy years of age the promisor held anything, as trustee, for the promisee? For who could tell him to enforce it? What (if the promisor did all he undertook) was to be the share on part of the promisee? The matter is preposterous.

In this case, suppose (as is a proper remedy) that the court should decree that the heirs are to be held as trustees to perform Pool's contract. To what property would it apply? Pool's contract was only to "bequeath and devise" by will, not all his property, nor any part of it, but only what he did

not devise or bequeath to some one else. And suppose the agreement had been that within twelve months, or some fixed time, Pool would deliver a will by which he would devise and bequeath to her what he did not so give to some one else, and the time passes, could Mrs. Crump, after the fixed time, by bill obtain specific performance of Pool? What would the decree order Pool to do—to make a will and give her what he did not give some one else? Which could be complied with by giving her nothing at all. And on what principle can the court decree the heirs to do more than Pool himself could be required to do if it were to be done in his lifetime? Mark, the contract to be enforced is not that she should have, at the death of Pool, what he owned or what he did not dispose of by will, but it was that he would make a will, and would thereby bequeath and devise to her what he did not " bequeath and devise " to some one else. There was no vested right in anything. There was no vested right to what he did not " bequeath and devise " to some one else. The adoption papers did not vest any right (except to the Sykes place), but she was to be vested with what, by the same act, was not vested in somebody else. And in every case where the making of a will was specifically enforced, or (what is the same thing) where the heir was held as trustee, there was a vested right to expect and have something which might be definitely ascertained from the contract.

The supreme court of New York, in a similar case, quoting from Lord Hardwicke, says: " Nothing is more established in this court than that any agreement of this kind ought to be certain, fair, and just in all its parts." Again: " I lay it down as a general proposition, to which I know no limitation, that all agreements, to be enforced by this court, must be certain and definite. And, although the uncertainty may be caused by the default of the defendant, the rule is not changed if the court, in order to enforce the contract, will be required to supply a new term to the agreement." And of the case then before the court it said: " The plaintiff cannot say that Mrs.

Miller intended that they, or any two of them, should have the land, looking· to the contract only," etc.    And the court refused to decree that plaintiff was entitled, although it was shown that there was an agreement that, at the death of Mrs. Miller, "Mr. Stanton and his family were entitled to have the house," and notwithstanding a deed had been prepared and executed and left in escrow.    But, as it was in escrow, and therefore revocable, it amounted to no appointment of the members of the Stanton family who were to receive the deed, and the contract was void for uncertainty.    Here there was never any designation of property.    On the contrary, it was left wholly to the future designation of Mr. Pool.    *Stanton* v. *Miller*, 58 New York., 192; *Johnston* v. *Hubbel*, 66 Am. Dec., 788; *Manning* v. *Pippen*, 95 Ala., 547, 548; *Woods* v. *Evans*, 55 Am. Rep., 411, 412; *Manning* v. *Pippen*, 86 Ala., 357.

We submit that Mrs. Crump is not owner by deed, descent, or will, and that the contract of adoption was (except as to the Sykes place) utterly indefinite, and incapable of specific enforcement.    And, above all, that it was not a contract or binding agreement at all, because the beneficiary could, and necessarily did, rely only on the bounty and generosity of Mr. Pool, and no right was vested in her.    And, as we have seen, under such circumstances the principle applicable to contracts to make a will have no application.    The statute of frauds is also conclusive against any right in Mrs. Crump.    Code Miss., 1880, par. 1296; *Wallace* v. *Long*, 55 Am. Rep., 228; *Wood* v. *Evans*, 55 Am. Rep., 411; *Manning* v. *Pippen*, 95 Ala., 541.

*Critz, Beckett & Jones,* on same side.

Does the adoption, *per se*, make the adopted child the heir of the adopting parents, by the terms of § 1496, code 1880 ?    This question must be answered in the negative.    The first clause of the section in question provides for legitimating offspring born out of wedlock, and empowers the court to make such offspring "the heir or joint heir" of the natural parent.    This clause

has nothing to do with the adoption proceedings, and has no bearing upon this case. On the other hand, the provisions as to adoption, *per se*, have nothing whatever to do with heirship. The rights of the adopted child are conferred by a statute which, in itself, not only does not affirmatively make the child an heir, but affirmatively shows that simple adoption cannot make it an heir. The only rights conferred upon the adopted child by the statute are given by that provision that empowers the court to decree "that such infant, so adopted, shall be entitled to all' the benefits proposed by the petitioner to be granted and conferred." *Expressio unius exclusio alterius.* Unless such benefits are affirmatively provided for in the adoption proceedings, the child gets no property rights whatever. The next clause of the statute says: "And thereafter the said petitioner shall have and exercise over such infant all such power and control as parents have over their own children." How plain and unmistakable this language is as to the rights of the adopting parent! And if the lawmakers had intended to make every adopted child an heir, how easy it was to have inserted a provision "that adopted children shall have all the rights and benefits which belong to the parents' own children." And, if it had been intended to confer the right of heirship, why did not our lawmakers provide for the same in express terms, as has been done by the statutes of nearly all the other states in the union which have legislated upon this subject? Am. Law of Guard., sec. 11, p. 30.

We do not dispute that the right of heirship may be given as one of the benefits conferred by the adoption decree, but it must be specifically provided for therein. Under a proper petition, the court might decree that the adopted child shall have all the property rights and benefits of a natural, legitimate child; or, that the adopted child shall be the heir of the adopting parent, with the same rights of inheritance as a child born in lawful wedlock, but no such decree was entered. It must be remembered that the benefits which may be provided for in the decree are not in

diminution of the general benefits given by the statute, but are in addition thereto. It is a most significant fact that our statute is unlike all other statutes upon this subject, and, for this reason, the decisions of other states upon their respective statutes can throw no light upon this case. Opposing counsel, with some show of confidence, said: "The case of *Vidal* v. *Commagere*, 13 La. Ann., 515, relied upon by opposing counsel as a leading case, was decided upon a special Louisiana statute, under the rules of the civil law, which is in force in that state, and can have no possible bearing on the case at bar. The right of adoption is expressly sanctioned by the civil law, and under its provisions the adopted child had the same right of inheritance as a natural child, born in wedlock." 1 Am. & Eng. Enc. L. (2 ed.), p. 726, and note; 89 Pa. St., 358; *Ballard* v. *Ward*, 84 Ala., 393.

The ancient Jews and the Athenians and Spartans recognized the right of adoption to some extent, and Germany, France, Spain, and other countries of continental Europe, whose jurisdiction in this respect has followed the civil law, give these same adoption rights. The French brought this law into Louisiana, and the Spaniards brought it into Mexico, and Texas brought this law with it, as part of its heritage from Mexico when it came into the union. But no principle of the civil law of adoption can be traced to Mississippi. We are under the common law, and "adoption is not recognized by the common law, being repugnant to its principles, and exists in the United States only by special statute." 1 Am. & Eng. Enc. L., p. 726, and note 2; Schouler's Dom. R., sec. 232; The Am. Law of Guard., sec. 10., p. 25. Then, as these statutes are innovations upon the common law, they must be strictly construed. All the decisions from other states of the union which give the adopted child the right of inheritance, simply follow the express provisions of the respective statutes in each case.

The adoption decree makes no allusion to any property except the Sykes plantation, and hence, *per se*, gives no right as

to the other property.  The only language in the petition to which we can look is as follows: "He also proposes to devise and bequeath all the balance of his property that he does not specifically devise or bequeath to others."  This is simply a proposition to do something in the future.  There is no element of completed action in it.  It is not only not a will, but it is not even a contract to make a will in the future.  It is not a contract at all, it is simply a proposal.  A proposal to sell property is neither the sale nor a contract to make the sale. The specific proposition must be specifically accepted before it is binding on the proposer.  If it be claimed that the decree of the court is an acceptance, then, when so accepted, it would rise to the dignity of an executory contract to make a will, but no higher.  It not only contemplates this future action, but this future action is contingent upon other future action.  He proposes to will her in the future all that he does not in his lifetime will to others.  Admitting, for argument's sake, that the decree was an acceptance of the proposal, then, if Pool had willed the property to Mrs. Crump on the last day of his life, it would have been an exact fulfillment of the contract, and hence it was necessarily an executory contract to do something in the future. It is not a will.  A will could not be executed in that way.  A will could not be made in the circuit court, and the circuit court has never had the power by its judgment to convert any kind of proposal or contract into a will.  Chapter 46 of the code of 1880, in relation to wills, prescribes certain solemn prerequisites that no court could ignore.

The petition in the adoption proceedings is not such a contract to make a will as will justify specific performance.  And the whole adoption proceedings did not impose upon Pool such an obligation, as to the property in question, as can be thus enforced.  Under this head, we meet opposing counsel at the threshold with the general announcement that specific performance "is never to be demanded as a matter of absolute right in either party, and a much stronger case is required to maintain

a suit than to defeat it.'' 22 Am. & Eng. Enc. L., p. 912, notes 1, 2. That mere proof of a valid, legal contract is not enough to maintain the right to a decree for specific performance. 113 Ill., 39; *Chicago R. R. Co.* v. *Reno*, 65 Wis., 502; *Menosha* v. *Railroad Co.*, 22 Am. & Eng. Enc. L., p. 911, note 1. That specific performance ''is the exact reverse of rescission, the defendant who resists the application for specific performance standing in the same attitude as that of the plaintiff who seeks rescission; but the relative positions of the parties are not precisely the same, for the heavier burden, in each case, is on the plaintiff.'' Chancery may refuse to decree specific performance of a contract, although it is such a contract as the court would not set aside if executed. 22 Am. & Eng. Enc. L., pp. 913, 914, note 2; *Hester* v. *Hooker*, 7 Smed. & M., 778; *Clement* v. *Baird*, 9 Smed. & M., 543; *Alston* v. *Robinson*, 49 Miss., 352; *Franklin* v. *Osgood*, 2 John. Ch. That the granting or denial of the relief sought rests in the sound discretion of the court, in view of all the circumstances of the case. 22 Am. & Eng. Enc. L., p. 910, note 1; *Bruck* v. *Tucker*, 42 Col., 347; *Daniel* v. *Frazier*, 48 Miss., 515; *Jones* v. *Stottam*, 2 Atk. (Eng.), 388.

Having thus announced these general principles, we now give the following statement of the requisites, without which a court of equity will never decree specific performance. (1) The performance must be necessary; (2) there must be a valuable consideration; (3) it must be practicable; (4) the agreement must be certain; (5) it must be mutual; (6) the contract must be fair and equitable. *Alston* v. *Robinson*, 49 Miss., 351, 352; *Daniel* v. *Frazer*, 40 Miss., 515; Adams' Eq., p. 77. Of these six prerequisites, we only desire to discuss three in this argument. (1) There must be a valuable consideration; (2) the contract or obligation must be certain; (3) the contract or obligation must be fair and equitable. There are three classes of considerations upon which promises may be based. (*a*) Valuable considerations; (*b*) meritorious consideration, sometimes

called imperfect or good consideration—the performance of a moral duty; (*c*) mere voluntary bounty, deed of gift, *nudum pactum.* Adams' Eq., star pp. 87, 88, top pp. 223, 224. And in order to reconcile the apparent conflict in the authorities upon the subject of consideration, we must keep in mind the difference in the rule as to (*d*) executed contracts, and as to (*e*) executory contracts.

In the case at bar there was no valuable consideration. All that Pool has done for Mrs. Crump has been the merest gratuity. What he has given her has been mere bounty, with no consideration except his love and sympathy for her. He took her when a penniless, helpless, motherless infant, but four months old, and raised her to womanhood, feeding, clothing, sheltering and educating her, from his own munificent estate, without charge, and then, upon her marriage, gave her the Sykes place, worth $16,000. Can any one say that she is damaged by these transactions if she don't get the balance of the estate ? Or can any one say that she comes under the principle announced in 3 Parsons on Contracts, bottom p. 313, and that she, "on the faith" of the adoption and promise to give her the property, did "some act" or "entered into some engagement or arrangement which the promise justified, and which a breach of the promise would make injurious to her?" The only inducement to him for the adoption is stated in the petition. In the beginning of the adoption petition it is stated "that said Seth P. Pool is her grand uncle." Then, in the conclusion, it is stated, "the said Seth P. Pool and Martha J. Pool have no children, and have raised the said Alice Hulsey from about four months old, and feel very much attached to her, and, therefore, ask the court to grant this petition." "Therefore," that is to say, in consideration of this attachment for her, they ask the court to grant the petition. Love and affection the only consideration, and these don't rise to the height of that natural love and affection which a man feels for his own children. No ties can ever be as strong for children as the ties of blood. A man's own chil-

dren are parts of himself—bone of his bone and flesh of his flesh. Natural love and affection for a man's own children are not sufficient consideration to secure a specific performance of his executory promise to make a will in their favor. *Kennedy* v. *Ware*, 44 Am. Dec. (Pa.), 145, 146; *Sharkey* v. *McDermott*, 60 Am. Rep. (Mo.), 272; Adams' Eq., star pp. 78, 79, top pp. 186, 187; 3 Parsons on Contracts, star pp, 362, 363, bottom pp. 316, 317.

The contract which is sought to be specifically executed must not only be proved, but its terms must be so precise that neither party could reasonably 'misunderstand them. If the contract is vague and uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy.'' 22 Am. & Eng. Enc. L., pp. 1006–1011, and notes, with authorities therein cited.

"This rule as to certainty is applied with much greater strictness against assignees and representatives of the contracting parties.'' *Odell* v. *Moran*, 5 Or., 96.

An agreement by one to take, maintain, and educate an orphan girl eleven years old, and for her services until she is eighteen years old, to leave her at his death a child's part of his estate, is too uncertain to be enforced in equity, as to the property. *Wood* v. *Evans*, 55 Am. Rep., 409–415 (113 Ill., 186).

"If the language employed leaves the intention of the parties who executed the contract in doubt, or if there is uncertainty in regard to what was intended, a court of equity will not undertake to decree a specific performance. In speaking upon this subject, Story (Sec. 767), says: 'If they (the contracts) are not certain in themselves, so as to enable the court to arrive at a clear result of what all the terms are, the will will not be specifically enforced. It would be inequitable to carry a contract into effect where the court is left to ascertain the intentions of the parties by mere conjecture or guess, for

it might be guilty of decreeing precisely what the parties never did intend or contemplate.' "    *Wood* v. *Evans*, 55 Am. Rep. (113 Ill., 186), 412; 1 Story's Eq. Jur. sec. 767; *Wallace* v. *Rapplege*, 103 Ill., 249; Waterman on Spec. Per., sec. 152.

There is but one theory certain in this whole controversy, and that is that everything as to Mrs. Crump's claim is absolutely uncertain, unless, in view of the authorities, it is made certain that she has no claim.

*S. M. Roane* and *J. J. McClellan*, for appellees.

1. Does Alice Hulsey Crump take Seth' P. Pool's property under the petition and order of adoption?

2. If not, can she have relief against appellants in the nature of a specific performance of the agreement and proposals made by Seth P. Pool in his petition for adoption, and the order of the court made upon said petition, or can she have relief against them as trustees of the legal title under the prayer for general relief?

Now, to determine either one of these points in the affirmative is tantamount to a decree for appellees.    For, if the first is answered affirmatively, then the cross bill is maintainable to remove clouds.    If not the first, but the second, then we are entitled to relief against appellant in the nature of specific performace, or relief against them as trustee of the naked legal title.

The definition given in the great Standard Dictionary of the word adopt, is, first, "To take or bring voluntarily into some relationship, and confer the privileges belonging to that relation (see also the definition of the word 'adoption')."    In law it means: " The legal act whereby an adult person takes a minor into the relation of a child, and thereby acquires the rights and incurs the responsibilities of a parent in respect to such minor. The child adopted under such an act becomes, for legal purposes, the child of the person adopting it, and on the death of such

person, intestate, will inherit as a child, in preference to a nephew.'' Standard Dictionary.

In Burrell's Law Dictionary, the following definition is given of the word ''adoption:'' ''A taking or choosing of another's child as one's own.''

The law of adoption comes to us from the civil law, and to it we must go in order to give to our statute on the subject its proper construction. It is true our statute is unlike any other we have found, and we have examined many. We find the law of adoption was known to the Athenians, the Spartans, the Germans, Spaniards, the Romans, and the French. The leading case upon the subject of adoption is the case of *Vidal* v. *Commagere*, 13 La. Ann., p. 516. It appears that the subject of adoption had been omitted from the code of 1808 of Louisiana, and a private act passed permitting, in general terms, the adoption of the child, and this case is a discussion of the technical and legal meaning of the word ''adopt,'' and the status of the adopted child. See, also, *Humphries* v. *Davis*, 50 Am. Rep., p. 788.

By a careful examination of the authorities, fully collated in the two cases above given, it will be found that to adopt a minor means something—it brings about the relation and status of parent and child, with all of the obligations and liabilities, as well as all of the benefits, of such a relation. There cannot be a child without the correlative of a parent; where there is one, there is the other, with all that the relation means. When the Mississippi lawmakers enacted the statute now under consideration, they did it to better the condition of the child, and to enable parties capable of making contracts to assume all of the responsibilities and liabilities growing out of the relation of parent and child, and to fix upon the capable parties such liabilities as they propose to assume. Then, can it be said that our lawmakers intended that the child might fulfill every part of her obligation, and yet, for the want of some affirmative act outside and independent of the promises and proposals in the

petition for adoption, get nothing in return for service and long lovingkindness, and for a full performance of obligations under the "contract of adoption," as it is called in sec. 11 of Warner's Treatise on Guardship, p. 30? We contend that such a construction placed upon our statute would be inequitable and unjust.

This contract of adoption, provided for in our law, is entered into with more solemnity and more safeguards than most contracts, but it is, nevertheless, a contract, and can be enforced, even where the statute has not been complied with the contract can be enforced. See 1 Am. & Eng. Enc. L. (2d ed.), p. 728, and note p. 729. Certainly, where there has been a strict compliance with the statute, the courts will see that the adopted child receives all the benefits proposed. In the case at bar all the provisions of law have been complied with.

It is contended by counsel for complainants that the decree or judgment of the court does not confer all the benefits and proposals contained in the petition upon the adopted child. We contend that the language of the judgment or decree is ample and full, conferring all the benefits and subjecting her to all the duties and liabilities conferred and imposed by § 1496 of code, 1880. The judgment recites that "it is to the best interest of said minor to grant said petition [not a part of it]. It is, therefore, considered, and so ordered by the court, that the said petition [not a part of it] be allowed and adoption granted," etc.

We think it is clear that Mrs. Crump, under the provisions of § 1496, and the petition for adoption, as filed and allowed by the court, takes by inheritance, under the principle that "equity looks upon things agreed to be done as actually performed," all the property of which Seth P. Pool died seized and possessed. See *Gray* v. *Holmes*, 33 L. R. A., 207; *Warren* v. *Prescot*, 17 L. R. A., 435; *Matre* v. *Sankey*, 23 L. R. A., 665; *Murphy* v. *Portrum*, 30 L. R. A., 263.

But, if the court is of the opinion that there is no inheritance

under the provisions of our statute and laws, then there is certainly a solemn written contract, carefully prepared under the very language and provisions of our statute, and solemnly entered into by all the parties concerned, under the very eye and direction of the court—as is fully set out in the petition of adoption and the order of the court granting said petition and making said adoption—which contract of adoption will be enforced in all of its parts.   Or, the court will regard that as done which ought to have been done, and will decree the property to Mrs. Crump.   "Equity regards that as done which ought to be done."   1 Pom. Eq. Jur., secs. 363–377, and notes to sec. 364.   "Equity looks upon that as done which ought to have been done."   Story Eq. Jur., sec. 64.   "What ought to be done is to be considered as done."   2 Spence Eq. Jur., 253; Adams Eq., 135.   "Equity looks upon things agreed to be done as actually performed."   1 Pom. Eq. Jur., sec. 375 and notes to sec. 373.

Now, if this equitable principle is applicable to the state of facts here presented, and we think it is, then Mrs. Crump is entitled to all the property, real and personal, of Seth P. Pool of which he died seized and possessed.   This was his intention, because, while he reserved the right to bequeath or devise his property otherwise, he did not do it, and thereby confirmed the idea for which we contend—that he intended, by not doing so, that Mrs. Crump should get it all.   The cross bill also shows that, after the adoption and before his death, he expressly mentioned the fact that his property all went to his adopted child (appellee).

It is contended by counsel for complainants, that appellee cannot have relief in the nature of specific performance, because she could not have had specific performance against Pool in his lifetime, and cites as authority *Bolman* v. *Overall*, 80 Ala., 451.   This very authority says: "It is not claimed, of course, that any court has the power to compel a person to execute a last will and testament, carrying out his agreement

to bequeath a legacy, for this can only be done in the lifetime
of the testator, and no breach of the agreement can be assumed
so long as the testator lives, and after his death he is no longer
capable of devising the thing agreed by him to be done.    But
the theory on which the courts proceed is to consider such
agreements,    .    .    .    to bind the property of the testator or
intestate so far as to fasten a trust on it in favor of the prom-
isee, and to enforce such trust against the heirs and personal
representatives of the deceased."  . 80 Ala., 445.    But counsel
says the contract is uncertain, because Pool had the right to
give all of his property to others, and defeat the promisee alto-
gether, so that she had no vested rights.    So it was in the Ala-
bama case, quoted above, and quoted by counsel, and strongly
relied upon by them.    Mrs. Loman's promise (in that case)
was to leave promisee all the property she owned at the time
of her death.    As was said by the court: " She had full power
to dispose of all her property during her lifetime, so that she
did it other than by will."    When the time for performance
arrived, it is certain, and can and will be enforced.    80 Ala.,
455.    The same principle is laid down by Story's Eq. Jur.,
sec. 786; also in *Johnston* v. *Abbel*, 66 Am. Dec., 777, where
it is stated, "A party may contract to will as much property
to A as he does to any other child; he may put it out of his
power to do so by giving all of his property away during his
lifetime; or, if he binds himself to give to A as much as he
gives to B by his will, he may in his lifetime give to B as much
as he pleases, so as by his will he shall give to A as much as
he gives to B.    But the gifts which he makes to B in his life-
time must be out and out."    If he reserves any right in the
property given B in his lifetime, it will be construed as a part
of his will, and B be required to account to A.    *Johnston* v.
*Hubbel*, 66 Am. Dec., 777.

In each of the cases above given it depended on the action of
the testator as to what property he would have subject to the
terms of the contract at the time of his death, or the date of

performance. It cannot be known what property any one will have at the time of his death, until he is dead, yet all the courts hold that he may make a contract disposing of all the property of which he may die possessed. When Pool proposed to devise and bequeath all of the balance of his property that he did not specifically devise or bequeath to others, it is just as certain as if he had said, "all the property of which I shall die seized and possessed." Who could tell what property he would die seized and possessed of, until he was dead? So, when he is dead, it is an easy matter to define and make definite what property is meant by "all of the balance of my property that I do not specifically devise or bequeath to others." The contract is certain and definite. As to the certainty, see 59 Miss., 558.

Counsel claim there is no consideration to support the contract. Is it no consideration for a girl to give up the name of her parents and take the name of another; to submit to the authority of her adopted parent; to live with him and minister to his wants in sickness, as well as in health; to fulfill all the duties and obligations of a loving, dutiful daughter in his declining years? The books are full of cases where the same is held to be sufficient consideration to uphold the promise to will all of the testator's property. *Kofka* v. *Rosisky*, 43 A. S. R., 685; *VanDyne* v. *Suland*, 11 N. Y. Eq., 370; *Gordine* v. *Kidd*, 19 N. Y. Sup., 335; *Sharkey* v. *McDermott*, 96 Mo., 647.

Our own statute settles the question of consideration, as well as the enforeceability of the contract. The statute says she shall receive all the benefits proposed in the petition. Sec. 1496, code 1880.

In this kind of a case no consideration is necessary. This has been adjudicated, and that question cannot now be raised.

*Mayes & Harris*, on same side.

We purpose only to supplement the excellent brief of our associates, Messrs. Roane & McClellan.

The case of *Vidal* v. *Comagere*, 13 La. Ann., 516, is the leading case to the effect that an adoption establishes a status of parent and child from the legal point of view, even when such adoption takes place under an authorizing statute which does not in terms declare that the right to inherit shall result; that the term "adopt" in the statute is itself sufficient to work that result. We cite, further: *Power* v. *Hafly*, 85 Ky., 671; *Re. Williams' Estate*, 102 Cal., 70; *Ross* v. *Ross*, 129 Mass., 243; *Russell* v. *Russell*, 84 Ala., 48; *Wagner* v. *Varner*, 50 Iowa, 532; *Burrage* v. *Briggs*, 120 Mass., 103.

That the agreement of adoption set forth in the record is a contract, and would have been even had it not been consummated by the statutory proceeding in the chancery court, and, *a fortiori*, that it is a contract when consummated according to the statute. In addition to authorities cited by our associates, we cite: *Hill* v. *Comme*, 1 Beavan, 541; *VanDuyne* v. *Vreeland*, 12 N. J. Eq., 142; *Van Tine* v. *Van Tine*, 15 At. Rep., 249; *Wright* v. *Wright*, 99 Mich., 170; *Brenton* v. *Van Cott*, 8 Utah, 480.

That an agreement to make a testamentary disposition is binding and is enforceable, we cite, in addition to the cases cited by associate counsel, the following: *Carmichael* v. *Carmichael*, 72 Mich., 76; *Brenton* v. *Van Cott*, 8 Utah, *supra; Shahan* v. *Swan*, 48 Ohio St., 25.

That the petition and decree are not objectionable on the ground of uncertainty of the description of the rights conferred and of the subject-matter of the promised bequest, we cite, in addition to authorities referred to by our associates: *Richardson* v. *Marqueze*, 59 Miss., 80–94; *Wickham* v. *Green*, 61 Miss., 463; *Ex parte Vorsey*, 21 Ch. Div., 442; *Kofka* v. *Rosisky*, 41 Neb., *supra; Van Tine* v. *Van Tine*, 15 At. Rep., *supra; Wright* v. *Wright*, 99 Mich., *supra.*

Argued orally by *R. C. Beckett*, for appellants, and by *J. J. McClellan* and *Edward Mayes*, for appellees.

WOODS, C. J., delivered the opinion of the court.

The appellants, as the legal heirs of one Seth P. Pool, exhibited their bill in the chancery court of Clay county, on the 27th day of April, 1897, in conformity to the provisions of "An act to provide a record of the descent of property, real and personal, in cases where persons die wholly or partially intestate" (acts of 1896, pp. 102, 103), seeking thereby to have themselves declared the heirs at law of said decedent, and to be placed in possession of his estate, and seeking to have canceled as a cloud upon their title the claim of Mrs. Crump to the estate, as decedent's sole heir under certain adoptive proceedings, which are fully set out in the bill and its exhibits.

The appellees answered fully, asserting Mrs. Crump's title to the estate under the judgment of adoption in the adoptive proceedings, and, making their answer a cross bill, pray that, "if the title to the estate did not descend to her as the adopted daughter of the decedent, by virtue of the adoptive proceedings and judgment therein, then that the court will decree specific performance upon the promises, proposals and agreements of the decedent to devise and bequeath to Mrs. Crump all the balance of his property which he did not devise or bequeath to others, as decedent bound himself to do in his petition for adoption, and as the court bound him by its judgment in that proceeding. The cross bill also prays that all right, title, claim and interest in and to the estate of which said decedent died seized and possessed be divested out of the complainants as a cloud upon Mrs. Crump's title.

To this cross bill appellants demurred, and assigned twenty-seven causes of demurrer. We need not set out these grounds specifically. Generally, they aver that there is no equity on the face of the cross bill; that the contract, of which is sought specific performance by the cross bill, is void under the statute of frauds; that the contract is without consideration, and that it is void for uncertainty.

The following statement of the facts disclosed by the record before us will show the grounds of contention:

In March, 1887, Seth P. Pool, under § 1496, code of 1880, presented to the circuit court of Clay county a petition for the adoption of Alice Hulsey, a minor (now Mrs. Crump, one of the appellees herein), then nearly eighteen years of age, and for the change of her name to Alice Hulsey Pool, averring that said minor was his grand niece and that she had been raised by him and his wife from the time when she was four months old. In the petition, Mr. Pool states that he proposes to devise to said minor his Sykes plantation, containing about seven hundred and ninety-seven acres of land, and worth about sixteen thousand dollars, for her lifetime, and, after her death, to the heirs of her body, and, in default thereof, to her next nearest of kin under the rule of descent and distribution in this state, and without power to incumber or convey the same, or the rents and profits thereof, for any debts of her husband, if she should marry. The petitioner also states in his petition that he proposes to devise or bequeath to the said minor all the balance of his property that he does not specifically devise or bequeath to others.

On the hearing of this petition, judgment was entered by the circuit court, which is substantially in these words: "It appearing to the satisfaction of the court that all the allegations of said petition are true, and that all the parties thereto consent and desire that said petition be granted; that Seth P. Pool is to devise and bequeath to said Alice Hulsey his plantation in Clay county, Mississippi, known as his Sykes plantation, described in said petition, and that it is to the best interest of said minor to grant said petition, it is therefore considered, and so ordered by the court, that the said petition be allowed, said adoption granted, and the name of said Alice Hulsey is hereby changed to Alice Hulsey Pool, and that she be entitled to all the benefits conferred and imposed by § 1496, code of 1880, in that behalf made and approved."

A few months thereafter Alice Hulsey Pool was married to one J. L. Crump, the other appellee herein, and in February, 1888, the said Seth P. Pool executed a conveyance to Mrs. Crump to the said Sykes plantation, and, in July, 1895, Mr. Pool executed to Mrs. Crump a conveyance to some other real estate. In December, 1896, Mr. Pool died intestate, and a few days after his death J. L. Crump took out letters of administration on Pool's estate.

The questions arising are clearly and concisely stated in the able brief of appellee's counsel, viz.: (1) Does Mrs. Crump take Mr. Pool's estate under the petition and judgment of adoption? (2) If not, can she have relief against appellants in her present suit, which is in the nature of one for specific performance of the agreement and proposals of Mr. Pool in his petition for adoption and the judgment of the court thereon; or can she have relief against them as trustees of the legal title under the bill as framed?

It will be well now to advert to and briefly consider the law of the State under which the adoption proceedings in the present case were had.

"The circuit courts shall have power, upon the petition of any person within their respective jurisdictions, to alter the name of such person, to make legitimate any of his offspring not born in wedlock, and to decree said offspring to be the heir or joint heir of the petitioner; and any person who may desire to adopt any infant, and to change the name of such infant, may present his petition for that purpose to the circuit court of the county in which he resides, or in which the infant may reside, and shall state in said petition the name and age of such infant, and the names of the parents or guardians, and their residence, if they be living, the name proposed to be given to such infant, and that he has obtained the consent of the parents, if living, or of the guardians, if any there be, and of the infant if over the age of fourteen years, to the adoption and change of name as prayed for; and shall also state in said peti-

tion what gifts, grants, bequests, or benefits he proposes to make or confer upon such infant, and the court shall hear the proofs, and if satisfied that the allegations of the petition are true, and that the interest and welfare of such infant will be promoted by such adoption, may decree that such child be adopted by the petitioner, and that the name be changed to the name proposed, and that said infant shall thereafter be called by that name; and that such infant so adopted shall be entitled to all the benefits proposed by the petitioner to be granted and conferred; and thereafter the said petitioner shall have and exercise over said infant all such power and control as parents have over their own children. . . . If the prayer of the petitioner be granted, in whole or in part, the proceedings and decree shall be recorded in the final record of judgments.''

The statute is wholly unlike those of the most of the states of the union, and is similar in some respects to those of only two states, so far as we have been able to ascertain. Resort to adjudications of foreign courts on dissimilar statutes will, therefore, afford us little or no assistance in interpreting our own statute. Fortunately, the statute is unambiguous and simple, and is susceptible of easy construction. In so far as it is an adoption statute, it covers two classes of cases. (1) On petition of any person, the court has the power conferred to make legitimate any of the offspring of the petitioner not born in wedlock, and, furthermore and specifically, to decree said offspring thus legitimated to be the heir, or joint heir, of the petitioner. Heirship for the children of one's own blood born out of wedlock, after their legitimation, is the plain purpose of the law in dealing with such children. (2) On petition of any person who may desire to adopt any infant, and to change its name, the petitioner therein stating what grants, gifts, bequests, or benefits he proposes to make or confer on the infant, the court may decree the adoption of the infant by the petitioner, and that the name be changed to that proposed, and that all the benefits proposed by the petitioner be granted and

conferred; or the prayer of the petitioner may be granted in whole or in part. But in this class there is no heirship embraced in the terms of the statute, unless heirship be one of the benefits proposed to be conferred on the infant by the petitioner. The adoption in this class carries with it only the specific gifts, grants, bequests, and benefits proposed in the petition. The petitioner may propose much or little, and the adoption decree can only secure to the infant the particular benefits proposed. This is not adoption in the general and unrestricted sense of that term. And the court may even grant the prayer of the petitioner in part only, as may appear to be for the infant's best interests.

As to appellant's contention that there is no sufficient consideration to uphold the proposals and agreements of the contract entered into by the petitioner in the adoption proceedings, it need only be said that the judgment of the court on the petition and the proceedings had in connection therewith, conclusively determined that question, and it is not now open to revision in this suit. That question was committed to the circuit court, and its judgment settled it.

Reference to any of the other questions than that raised by the fourteenth and twenty-sixth grounds of demurrer will be unnecessary, in view of the opinion which we entertain as to the uncertainty in the description of the property referred to in the petition for adoption and the judgment of the court thereon. In the judgment itself no property whatever is named except the Sykes plantation. That property the petitioner conveyed to Mrs. Crump many years before his death, and with it we need not concern ourselves.

Now, conceding that the judgment of the court, which decreed that the adopted minor "be entitled to all the benefits and subject to all the duties and liabilities conferred and imposed by § 1496 of the code of 1880," was intended to embrace and did embrace the benefits proposed in the petition for adoption, it is clear that the minor did not become invested

with title to the property now in suit in any of the modes of acquiring title known to the law. The estate of Mr. Pool at his death descended to his heirs; but, if the argument of appellees' counsel be sound, it so descended clothed with a trust in appellees' favor, created by the adoption proceedings, and the execution of this trust Mrs. Crump seeks in this action in a court of equity, on the ground of the court's jurisdiction, to compel specific performance.

It is important here to note that the proposal of Mr. Pool, in the petition for adoption, to bequeath and devise an unascertained and indefinite portion of his estate—viz., what he did not devise or bequeath to others—was not the consideration which moved the minor, or her father and guardian, to assent to the adoption; for, without doing any violence to the terms of the petition, or those of the court's judgment thereon, Mr. Pool retained the absolute right of disposing of his entire estate, except the Sykes plantation, during his lifetime by gift or grant to others, and by devise at his death to others than Mrs. Crump. Mrs. Crump had only an expectation of becoming the object, in the future, of Mr. Pool's bounty, and this indefinite and uncertain proposal of Mr. Pool brought him under no legal obligation capable of specific enforcement. The agreement of the petitioner was definite and certain as to the Sykes plantation, but as to all other property it was indefinite and uncertain. Everything, except the Sykes plantation, was left for disposition at the petitioner's pleasure. The most favorable view which can be taken for appellant conducts to the conclusion that the petitioner, by devise, would designate particularly what property, other than the Sykes plantation, should pass to Mrs. Crump at his death. Did she acquire a vested right to any particular piece of property under the proposal to devise whatever the petitioner did not devise to others? Manifestly not, for the petitioner might part with his entire estate at his pleasure during his lifetime, or he might devise all to others. Whatever the minor might acquire in the

future was left wholly to Mr. Pool's discretion and designation, to be thereafter exercised and made.   The minor only had the expectation of receiving, as the object of Mr. Pool's generosity, some indefinite and uncertain portion of Mr. Pool's estate. It is elementary learning that agreements must be definite and certain in order to their enforcement in equity under proceedings akin to those for specific performance.

We borrow an illustration from the brief of appellants' counsel, which re-enforces the argument:   Suppose the proposal of Mr. Pool had been, within twelve months, to execute and deliver a will by which he would devise and bequeath to Mrs. Crump what he did not devise and bequeath to others.   Could Mrs. Crump, after the lapse of the twelve months, secure specific performance of the proposal by suit for that purpose? If the court should undertake to decree specific performance, what would be the result?   The promisor would be required to make a will and devise and bequeath to the promisee, what? Just what he might choose to do—nothing, if he so wished. "If Mr. Pool could, in such case, have been required to do nothing," the counsel pertinently ask, "on what principle can the court decree Pool's heirs to do more than Pool himself could have been required to do?"

To our mind it seems clear that what Mrs. Crump was to have devised and bequeathed was wholly uncertain and indefinite, and that she only had an expectation of being made the object of Mr. Poole's future and further bounty, and that specific performance cannot be decreed.

*Reversed and remanded.*