JUDGE PETERS
delivered the opinion oe the court.
Morty O’Brian, having been tried and convicted in the Hickman Circuit Court for the murder of Timothy Hogan, and his motion for a new trial having been overruled, has appealed to this court, asking a reversal of the judgment.
At the trial term, after a jury had been selected and sworn, and Dr. Jackson, the first witness introduced, had closed his evidence, Mr. Spillman, one of the jurors, announced to the court that he then recollected, after hearing the testimony of Hr. Jackson, that he was a member of the grand jury that found the indictment against the prisoner. Thereupon the court sua sponte ordered that Spillman should be discharged from the jury and another juror substituted in his place, to which orders and rulings of the court appellant objected and excepted, nor did the attorney for the commonwealth object to the juror. Four persons were then summoned and presented, all of whom were peremptorily challenged by appellant. Mr. Nance was then offered, and being unwilling to be tried by him appellant claimed the right to challenge him peremptorily, *566 to wbicb appellee objected because, in tbe formation of tbe jury of which Spillman was a member, appellant bad peremptorily challenged sixteen, wbicb, added to tbe four subsequently made, exhausted bis privilege. Tbe objection was sustained by tbe court below, Nance, impaneled and sworn as a juror, with tbe eleven previously selected, who were again sworn; to all wbicb exceptions were in due time properly taken by appellant, and by this jury thus formed he was tried and found guilty.
The first question presented on tbe record is, bad the coui’t of its own will tbe power to discharge tbe juror, when tbe objection to him was waived, after tbe fact was disclosed that be was a member of tbe grand jury wbicb found tbe indictment, against tbe consent of appellant?
By section 211, Civil Code, a challenge is allowed to jurors for implied bias, and having served on tbe grand jury which, found tbe indictment is named as constituting an implied bias for wbicb a challenge may be taken. But this right may be waived by tbe defendant, and if be bad full knowledge of tbe fact when tbe juror was presented, and failed then to make tbe objection, bis failure would constitute a waiver of tbe right, and a verdict afterward could not be set aside on that account.
As tbe fact was not known to the defendant until after tbe jury was sworn and the trial commenced, be would then have bad tbe right to object to proceeding with tbe trial, while tbe commonwealth would have bad no such right; or tbe defendant might have waived bis right, as be mould have done when tbe juror was first presented, if be bad known tbe fact; and having waived tbe objection, be bad a right to demand that tbe trial should progress, and of this right be could not be deprived by tbe mere will of tbe court. It results therefore that tbe court below erred in discharging Spillman from tbe jury with *567 out the consent of the defendant; and it is proper to add that his discharge operated as a discharge of the entire jury.
But it is insisted by the able counsel for appellant that the discharge of Spillman from the jury without his consent operated as an acquittal or a bar to the further prosecution of the case; and we are referred to "Wharton’s American Criminal Law, section 3128, and note d, and other authorities, as fully sustaining the position assumed. The authorities on this question are certainly conflicting, and the section referred to announces the principle, in very explicit and concise terms, that “an arbitrary discharge of the jury without sufficient reason relieves the defendant from a second trial.” That announcement is made, as is shown by the note, on the authority of three cases — one from Ohio, of Poage v. State, 3 Ohio Reports, 229; one from New York, Block v. People, 2 Parker C. R. (N. Y.) 676; Atkins v. State, 16 Arkansas, 568. The ruling of this question in New York has not been uniform. In one case the question was elaborately argued, where, on an indictment for manslaughter, the jury, after hearing the whole case and being unable to agree on a verdict, were discharged by the court without the consent of the prisoner. The defendant insisted that he could not again be put upon his trial because the constitution of the United States declared, “nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb.”
The court held in that case that the meaning of that clause was that no man shall be tried twice for the same offense; and the true test by which to decide the point whether he was tried or not is by the plea of autrefois acquit or autrefois convict; and that a defendant is not put in jeopardy until the verdict is rendered for or against him, and when for or against him, he can never be called *568 in question again for tbe same offense. Tbe conclusion of tbe court was that tbe discharge of tbe jury before verdict was no bar to tbe prosecution. And tbe law was ruled in tbe same way in Massachusetts. (Commonwealth v. Bowden, 9 Mass. 194.)
Tbe question came up in 1824 in tbe Supreme Court of tbe United States, in United States v. Perez, 9 Wheaton, 579. The jury having been discharged in tbe court below on mere disagreement, tbe court said, Was tbe discharge of tbe j ury by tbe court, from giving any verdict upon tbe indictment with which they were charged, without tbe consent of tbe prisoner, a bar to any future trial for the same offense? If it be, then be is entitled to be discharged from custody; if not, then be ought to be held in imprisonment until such trial can be bad. We are of opinion that tbe facts constitute no legal bar to a future trial. Tbe prisoner has not been convicted or acquitted, and may again be put on bis defense. We think that in all cases of this nature the law has invested courts of justice with authority to discharge a jury from giving any verdict whenever in their opinion, taking all tbe circumstances into consideration, there is a manifest necessity for tbe act, or tbe ends of public justice would otherwise be defeated. They are to exercise, a sound discretion on tbe subject; and it is impossible to define all tbe circumstances which would render it proper to interfere. Tbe power ought to be used with tbe greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially courts should be extremely careful bow they interfere with any of tbe chances of life in favor of tbe prisoner. But after all they have a right to order tbe discharge, and tbe security which tbe public have for tbe faithful, sound, and conscientious exercise of this discretion rests in this as in other cases upon tbe responsibility *569 of the judges under their oaths of office. We are aware that there is some diversity of opinion and practice on this subject in the American courts; but, after weighing the question with due deliberation, we are of opinion that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put on his trial. '
The 12th section of article 10 of the new constitution of Kentucky declares that “no person shall for the same offense be twice put in jeopardy of his life or limb,” which is copied from the former constitution of the state; and the proper interpretation of this provision came before this court incidentally in the case of-the Commonwealth v. Olds, 5 Litt. 187 — a case not involving life or limb, but, as the court said, a cause partaking of the nature of a criminal proceeding; and the court held that to say the putting the offender on his trial before a jury who had the right of pronouncing finally on his guilt or innocence exempts him from being again brought before another if the former do not agree, and that the commonwealth has no right to call and swear two or more juries against him, is to give to this clause of the constitution entirely too broad a construction. If we ascertain what is necessary to constitute at common law a good plea of autrefois acquit or autrefois convict, we shall have what constitutes a complete defense under this clause of the constitution. It is not therefore possible.to support the defense of a former acquittal by anything short of a final judgment or verdict on a second indictment for the same offense. And then concludes that the discharge of the jury without a verdict for or against the defendant did not discharge him; and this reasoning applies as well to criminal prosecutions as to cases of mere misdemeanors.
Justice Washington said, in a, case where the jury had *570 been discharged in a trial for a homicide, in the opinion of the court delivered by him, that the jeopardy spoken of in the article of the constitution of the United States, supra, can be interpreted to mean nothing short of the acquittal or conviction of the prisoner, and the judgment of the court thereupon. (Wharton’s American Criminal Law, sec. 580.)
The restriction in the Federal constitution heretofore quoted, and which is found in the constitution of this state, and in those of most of the states of the Union, seems to be regarded by the weight of authority as the solemn asseveration of the common law maxim, that when there has been a final verdict, either of acquittal or conviction, on a sufficient indictment, the defendant can not be a second time placed in jeopardy for that particular offense.
We therefore feel constrained to the conclusion, both by reason and the decided weight of authority, that the dismissal of Spillman by the court from the jury, whereby the entire jury was discharged, can not operate in law as a bar to trial of the appellant hereafter for the offense, but that he may again be put on his trial therefor. Nor do we think the sections of the Criminal Code to which we have been referred by appellant’s counsel are applicable to or can control this case.
The effect of permitting the indictment, with the verdict of a former jury on the back finding him guilty, to be taken to their room by the jury will be avoided hereafter; and whether that is an error for which this court could reverse need not now be discussed.
The only remaining question to be disposed of is whether the court below erred in admitting the testimony of W. B. Vance. It appears that appellant was brought before Vance, mayor of Columbus, sitting as an examining *571 court, on a charge of having shot Hogan with intent to kill him; and on that trial Hogan was examined as a witness for the commonwealth; and on the trial in this ease Yance was called to prove what Hogan stated on his examination on that trial as to the manner of the shooting, and who shot him. The evidence was objected to by appellant, but his objections were overruled, and the evidence admitted.
The rule seems to be that where the witness is dead, his evidence judicially taken in one proceeding may be used in another proceeding between the same parties, the party against whom the evidence is offered having had an opportunity to cross-examine in the former proceeding. And it is said “ the same principle applies where there are two trials; there, if a witness has died between the first and second trials, it may on the second be proved what he swore to on the first — a doctrine which prevails in criminal causes as well as in civil, and in general in the United States as well as in England.” (1 Bishop on Criminal Proceedings, see. 527).
It seems therefore upon authority that it was compe tent to prove what Hogan swore to before Yance on the examining trial, as the shooting was the same for which appellant was being tried, and as it appeared that he was present and had the opportunity to cross-examine him. Nor do we think the provision of section 57, Criminal Code, and the amendment thereto, conflict with this view, But for the reasons stated herein the judgment is reversed, and the cause is remanded for a new trial, and for further proceedings not inconsistent herewith.