CASE 38—PETITION EQUITY—FEBRUARY 5.

# Miller v. Hayden, &c.

APPEAL FROM DAVEISS CIRCUIT COURT.

RIGHT TO DRAIN ONE'S LAND UPON LAND OF ANOTHER—ESTOPPEL.—
One has no right to drain his land by collecting the water in artificial channels and discharging it upon the land of another.

In this case the chancellor properly enjoined the defendants from cleaning out a ditch which had been allowed to fill up, as the ditch, when open, overflowed plaintiff's land; but it was error to enjoin defendants from permitting the ditch to remain open, and from permitting "any water to flow through said ditch on plaintiff's lands." The plaintiff's vendor having consented to the making of the ditch, and plaintiff having purchased with knowledge of the condition of the ditch, he can only complain of the purpose of defendants to clean out the ditch, so as to make it capable of throwing the water in larger quantities upon his land.

G. W. WILLIAMS & SON FOR APPELLANT.

1. When the owners of the land who licensed the ditch induced the owners of the land drained to expend their money in the construction of the ditch, the license became irrevocable, and the present appellees, being the vendees of the licensors, and having notice of the existence of the ditch, which was visible on the land, are estopped to dispute appellant's right to use the ditch. (Angell on Water Courses, section 318; Washburne on Easements, side pages 317-318; Herman's Law of Estoppel, p. 494, secs. 517, 518, 519; Cobb v. Smith, 16 Wis., 661; Kerr on Injunctions, side pages 41-44.)

2. The chancellor interposes by injunction only where the right is manifest. (Kerr on Injunctions, side pages 200-203.)

3. In any event it was error to enjoin appellants from permitting any water to flow through the ditch.

Miller v. Hayden, &c.

W. T. OWEN on same side.

1. Where the owner of an estate has by parol granted an easement in his
   land, upon the faith of which the other party has expended moneys
   which will be lost if the right to enjoy such easement is revoked,
   equity will enjoin the owner of the first estate from preventing the
   use of the easement. (Washburne on Easements and Servitudes, p.
   90; Dillon v. Crook, &c., 11 Bush, 323.)

2. While one may not collect surface water into artificial channels on his
   own land, and pour the same through these upon a lower proprietor's
   land, he may discharge the same through such channels into a natural
   stream flowing through his own land, though it may swell the natural
   quantity in such streams when it reaches the lands below his. (Wash-
   burne on Easements, pages 460-463; Ogburn v. Conner, 13 Am. Rep.,
   215; McCormick v. Horan, 37 Am. Rep., 479.)

3. No injunction should be granted in a case like this unless the injury to
   be done by the ditch is obvious, and such as to require immediate in-
   terference in order to prevent great and permanent mischief. (Story's
   Eq. Jur., secs. 925, 926.)

4. The ditch in question has been adopted by the county court as a road
   ditch, and is, therefore, a public as well as a private ditch, and is not
   governed by the rules applicable to a private ditch. (Gen. Stats.,
   chap. 94, sec. 21.)

5. The facts did not authorize a mandatory injunction.

GEORGE W. JOLLY for appellees.

1. Surface water can not be lawfully collected into ditches and discharged
   upon adjoining lands. (Pettigrew v. Village of Evansville, 25 Wis.,
   223; High on Injunctions, secs. 751, 809, note 2, and 852, note 4;
   Washburne on Easements and Servitudes, sec. 6, pp. 353 to 355; An-
   gell on Water Courses, secs. 108 $j$ and 108 $k$.)

   The following cases support the plaintiff's action: Miller v. Lau-
   back, 47 Pa.; s. c., 86 Am. Dec., 522; Butler v. Beck, 16 Ohio, 335;
   s. c., 88 Am. Dec., 452, and note; Adams v. Walker, 34 Conn., 466;
   s. c., 91 Am. Dec., 742; Nevins v. City of Peoria, 41 Ill., 502; s. c., 89
   Am. Dec., 392, and note, Gannon v. Hargadon, 10 Allen, 106; s. c., 87
   Am. Dec., 625, and note.

2. The county, without first making compensation, has no more right to
   construct ditches and flood a land-owner's lands than an individual
   would have. (Pumpelly v. Green Bay Co., 13 Wall, 166; Nevins
   v. Peoria, 41 Ill., 502; Pettigrew v. Evansville, 25 Wis., 223.)

3. The power of courts of equity to grant mandatory injunctions can not
   be questioned. (High on Injunctions, secs. 2 and 809; Lane v. New-
   digate, 10 Ves., 192.)

Miller v. Hayden, &c.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1876 the defendants in the court below and appellants in this court were interested in draining what was marshy, wet land, and known as Grassy Flat. The appellee purchased land adjacent to or near this swamp, and there is testimony conducing to show that a remote vendor, while in the possession of the land sold the appellee, united with the other parties in interest for the purpose of digging a ditch that would drain this swamp land. There is an elevation between the swamp and the land of the appellee, and through this elevation the ditch had to be dug so as to cause the drainage. When through the elevation the land of the appellee was several feet lower than the land above, where the swamp was located. The ditch never reached the land owned now by the appellee but then owned by his vendor, but was dug through the elevated ground to such a distance as caused the drainage from the swamp to overflow and seriously injure the land now in the possession of the appellee. The parties interested were endeavoring to cut a ditch in a southerly direction through the ridge to Panther creek, where the water from this swamp could flow into this natural channel without injuring the lands south of the ridge that were lower than the lands above. The ditch was cut through the ridge, and there the work stopped, and, as the proof conduces to show, for the want of means to complete it. The result of the failure to complete the work was the overflow of Mattingly's land (now owned by the appellee), and the destruction of his crop of tobacco and a part of his crop of corn. After this, Mattingly

threatening to sue, the work was abandoned; the sides of the ditch caved in, trees and limbs of trees falling into it until, in many places, it was nearly filled up.

In the year 1885 the appellee became the owner of this Mattingly land, or parts of it, and in December, 1887, the appellants began to work on this ditch by cleaning it out and removing the obstructions, so that the water from the swamp might flow through it, and the appellee obtained his injunction, preventing them from cleaning out the ditch, and asked that the appellants, on final hearing, be compelled to replace the dirt and obstructions that had been taken from it.

It is insisted by the appellants that Mattingly, who owned the land of the appellee when the ditch was being dug, consented that it should be done, and that the appellees, when they purchased, knew that the ditch had been dug, and all are, therefore, estopped from interfering with the appellants in their effort to clean it out. It is apparent that the understanding between the parties who owned these lands when the excavation was made was that the ditch should extend to Panther creek, and in this way drain the lands both north and south of the ridge into that creek, and in this mode all the wet lands would be reclaimed. It is of vital importance to these appellants to have their land drained, but equally as important to the appellees to prevent the flow of the water from the appellants' lands on to their lands. It is manifest that Mattingly's complaint was listened to at the time he threatened to sue for the injury to his crops, as the facts indicate that no effort has been made to extend the ditch, and those interested, including the ap-

pellants, have permitted the ditch to fill up as much as two and a half feet at many places, and there has been no complaint of an injury to the lands or crops south of the ridge by reason of that ditch for many years, or at least there is an absence of proof on that subject, which fact tends strongly to show that the filling of the ditch has lessened the injury to the lands south of its terminus. Besides, it appears that the entire lands now submerged with this standing water could be relieved of their burden by a small expenditure, and with so many interests involved, and with land of such value, no reason appears for benefiting the lands above the ridge at the expense and injury of the land-owner below.

"An owner of land has no right to rid his land of surface water or superficially percolating water by collecting them in artificial channels, and discharging it through or upon the land of an adjoining proprietor." (Gould on Waters, page 471, sec. 271.)

In a well-considered case, reported in 21 Iowa, 160, of Livingston v. McDonald, it was held that a ditch constructed by the owner of land which increased the flow of water on the lower lands below, and in a different manner from which the water would have naturally flowed, was liable for the injury. This doctrine seems to be universally recognized, and when applied to the facts of this case it results that the chancellor, looking to the damage that would follow if the ditch was reopened, properly entertained jurisdiction in granting the relief asked. In perpetuating the injunction the chancellor has gone too far in his order to the appellants, mandatory in its char-

acter, by which the appellants violate the injunction if they permit the ditch heretofore opened to remain open, made or cut. The language is: "*Or permit to remain open the ditch heretofore opened; nor shall the defendants permit any water to flow through said ditch on plaintiffs' lands.*"

In order to obey this injunction the appellants would be compelled to fill up the ditch, or to erect a dam so as to prevent the flow of water on to the land of the appellees. They might have been required to replace the dirt and debris they had taken from the ditch if that contributed to the flow of water; but it appears that the work had scarcely begun when the preliminary injunction was obtained, and the evidence does not show that any greater flow of water would pass through the ditch by reason of this attempt to move the dirt and logs that had filled it up. It appears from the entire testimony that water still flows through this ditch, and to require the appellants to prevent it is not authorized from the testimony before us. It seems to have been an enterprise common to all the owners of land above and below this ridge that divided the low land from the marsh land above, and after expending what money had been raised for the improvement the scheme was abandoned, and the ditch neglected for years, until it was nearly filled up. Mattingly, who owned this land at the time, consented to it, but with the understanding that it would be extended, and the appellees becoming the owners from the vendees of Mattingly, and knowing the condition of the ditch when they purchased the land, can only complain of the attempt or purpose of the appellants

to clean out the ditch, so as to make it capable of carrying off the water in larger quantities, on to their land.    To require the appellants to stay the flow of water altogether, when the original owner of the land had participated in this scheme of draining, or at least consented to it, would be compelling the appellants, by their own labor, to enhance the value of appellees' land, when, at the time the appellees purchased it, the ditch had been dug, and was carrying off small quantities of water from the land above, a fact well known to them, and one that no doubt entered into the contract, or was considered by them when they made the purchase.    The injunction should have prohibited the appellants from cleaning out the ditch, or from reconstructing it in any way, so as to increase the flow of water on appellees' land.

Judgment reversed, and remanded for proceedings consistent with this opinion.