CASE 100—ACTION FOR DAMAGES FOR TRESPASS—JUNE 9.

# Bridges, Etc. v. McAlister.

APPEAL FROM DAVIESS CIRCUIT COURT.

| 106 | 791 |
|-----|-----|
| 108 | 764 |

| 106 | 791 |
|------|-----|
| e125 | 429 |

| 106 | 791 |
|------|-----|
| 133 | 779 |

1. JUDGMENTS—ESTOPPEL.—An unsuperseded judgment requiring the filling up of a drainage ditch is binding on the parties and privies to same as long as it remains unreversed, and an action for damages will not lie for flooding plaintiff's premises against one who fills up the ditch in obedience to the judgment prior to the reversal of same.

2. SAME—PRIVIES.—A person who employs an agent to act for him in the performance of an act for which the agent is enjoined is a privy to the judgment rendered in the action against the agent, and is bound by the judgment as long as the same is unreversed.

3. SAME.—Parties not bound by former appeal as to matters not in issue. The fact that appellee was privy to the former judgment not being before the court on a former appeal it was proper to permit that fact to be set up by amendment.

Bridges, &c., v. McAlister.

GEORGE W. JOLLY AND HORACE JOLLY FOR APPELLANTS.

1. A judgment, though subsequently reversed for error, furnishes full protection for all acts done under it in enforcing it, prior to its reversal. Freeman on Judgments, secs. 482, 104b; Black on Judgments, secs. 355, 170; Simpson v. Hornbeck, 3 Lansing, 53; Clark v. Pinney, 6 Cowen, 297; Allen v. Huntington, 16 Am. Dec., 702; Kaye v. Kean, 18 B. M., 847; Clark v. Rhodes, 12 Bush, 16.

2. Judgments are conclusive on not only the parties to the record but also on all who are in privity, and on the master where the servant is sued, and on the principal where the agent is sued, if the master or principal had notice♦of the 'pendency of the 'suit. Emery v. Fowler, 39 Maine, 326; s. c. 63 Am. Dec., 627, and cases 'cited; Hill v. Blaine, 15 Rhode Island, 75; s. c. 2 Am. St. Rep., 873, and cases cited; Herman on Estoppel and Res Adjudicata, secs. 150, 152; Freeman on Judgments, secs. 174, 175; Schmitt v. Ry. Co., 99 Ky., 143; s. c. 18 Ky. Law Rep., 65; Castle v. Noyes, 14 N. Y., 329; Alexander v. Tyler, 4 Denio, 302; Jackson v. Griswold, 4 Hill., 522; Robbins v. Chicago, 4 Wallace, 672; Blainsdale v. Babcock, 1 Johnson, 519; LeNeve, v. LeNeve, 2 Ldg. Cases, Eq., 160, note; Ellis v. Sheffield Gas Co., 12 E. & B., 169.

3. A plea 'that 'the matters involved ́in the suit had been, for a valuable consideration, before the suit was commenced, compromised and settled between the parties to the suit, is a good defense to the action.

4. There was no evidence to support the verdict and peremptory instruction should have been given, because the plaintiff's own evidence proved he was not in possession of the crops; that the crops belonged to his tenants none of whom were parties to the suit. Chicago, &c., Ry. Co. v. Linard, 94 Ind., 319; s. c. 48 Am. Rep,. 161; Bridges v. Dill and others, 97 N. C., 222; s. c. 1 S. E. R., 767. The measure of damages for destruction to growing crops is not 'the rental value of the land, but the value of the crops at 'the 'time of their destruction. Sedgwick on Damages (18th ed.), secs. 937, 434, 435 and cases cited, especially Sabine R. R. Co. v. Smith, 73 Tex., 1; s. c. 11 S. W. R., 123; Byrne v. Railway Co., 38 Minn., 212; s. c. 8 Am. St. Rep., 669.

5. The circuit court should have granted a new trial on the ground that 'the verdict was not sustained by sufficient evidence, or, because contrary to law. Civil Code, sec. 340, sub-sec. 6.

R. G. HILL ON THE SAME SIDE.

1. The judgment pleaded herein is a bar to appellee's cause of action and appellee was a privy to the case in which the judgment was

Bridges, &c., v. McAlister.

rendered and the court erred in refusing to allow the amended answers of October 16, 1894, and November 1, 1897, to be filed.

2. The judgment should be reversed because the court refused to allow the amended answer tendered on October 26, 1897, to be filed, pleading an adjustment and settlement of all damages growing out of the complaint laid in the petition.

3. The instructions offered by appellants should not have been refused, and those given are misleading and leave nothing to the jury but to fix the damages.

Citations: Herman on Estoppel and Res Adjudicata, vol. 1, secs. 150, 151, 152, 153, 154, 155 and 156, and authorities cited; 4 Dana, 136; 5 Dana, 193; 1 B. M., 29; 14 B. M., 40; 96 Ky., 640.

SWEENEY, ELLIS & SWEENEY AND WALKER & SLACK FOR THE APPELLEE.

Counsel discussed *seriatim* the points made in the brief of G. W. and Horace Jolly, and upon same made the following citations:

McCallister v. Bridges, &c., 15 Ky. Law Rep., 92; Same v. Same, 19 Ky. Law Rep., 109; 12 Am. & Eng. Ency. of Law., 125; Ky. Stats., Courts, sixth district, 444.

SWEENEY, ELLIS & SWEENEY FOR APPELLEE IN A PETITION FOR A REHEARING.

1. The question whether the record in the Miller-Hayden case had been improperly admitted as evidence before the jury was considered on the first appeal and that question is *res adjudicata*.

2. The former opinion is conclusive upon this court upon all points covered by it. Merrideth v. Clark, Sneed, 189; Kennedy v. Merridith, 4 Mon., 410; Mason v. Mason, 5 Bush, 193; LeGrand v. Baker, 6 Mon., 243; Smith v. Brannin, 79 Ky., 114. And this principle is applicable to all points which should have been presented. Davis v. McCorkle, 14 Bush, 746.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

Appellants and appellee own neighboring farms. Between their lands there was a ridge, which prevented the water falling on appellee's land from flowing down naturally over appellants' land. Both farms lie in a very level section, where there is difficulty about drainage. Some years ago the owners of the land above the ridge, and some of those below, united in an undertaking to cut a ditch in a southerly direction, through the ridge, to Panther creek,

for the purpose of draining all their land. The ditch was cut through the ridge, but, for want of means to complete it, there stopped. The result of this was that the lands above the ridge were drained and the lands below were flooded by water that did not by nature flow upon them. The work on the ditch was abandoned. It caved in. Trees and other things fell in it, until in many places it was nearly filled up. The owners of land above the ridge after some years employed William Miller to clean it out, and, he having begun to do so, appellants and others, owning land below the ridge, filed suit against him for the purpose of enjoining him from cleaning out the ditch. On the hearing of this case the circuit court entered a mandatory order requiring the ditch to be filled up so that no water could pass over the ridge that did not flow over it naturally. On appeal from this judgment to this court it was held that the injunction should have prohibited the appellant from cleaning out the ditch, or from reconstructing it in any way so as to increase the flow of water on the land below it, and that it was error to require the ditch to be filled up. See Miller v. Hayden, 91 Ky., 215, [15 S. W., 243]. On the return of the cause a judgment was entered in that action pursuant to the mandate of this court. This was something over two years after the entry of the original judgment requiring the ditch to be filled up. There had been no *supersedeas* of that judgment, and, in obedience to it, the ditch had been filled up as therein required. By reason of the filling up of the ditch under the judgment, the water which had passed through it from appellee's land could no longer escape in this way, and was thrown back on it. After the ditch had been opened to the extent indicated by the judgment entered in obedience of the opinion of this court, appellee brought this suit for damages to

his land from the closing of the ditch for the two years it had remained stopped up under the judgment. Appellants pleaded, in defense of the action, that the ditch had been stopped up in obedience to the order of the court, and relied upon that judgment as a protection to them for damages sustained by reason of what was done in obedience to it, there being no *supersedeas*. They did not allege, however, that appellee was party or privy to the case in which the judgment was rendered, and the court sustained a demurrer to this plea. There was then a trial, and verdict for defendants, which, on appeal to this court was set aside, the opinion of this court pointing out that the judgment pleaded was no bar, because it was not averred that appellee was party or privy to that action. McAllister v. Bridges, 19 Ky. L. R., 107, [40 S. W., 70]. There was no cross appeal in that case, and from the nature of the case there could be none; so the only question before the court was whether there had been a fair trial before the jury. Nothing more was considered or decided.

On the return of the case the defendant tendered an amended answer, in which he set out that Miller, while cleaning out the ditch, was acting as the agent and servant of appellee, McAlister; that appellee, with others, employed him to dig the ditch, and knew of the suit, testified in it as a witness, and that Miller was only their agent in the transaction. The court below refused to allow the amended answer to be filed, holding, in effect, that the judgment was no protection as to acts done under it, though not superseded. There was then another trial, resulting in a verdict for $1,000 in favor of appellee.

The main question arising on this appeal is as to the effect of the reversed judgment on acts done under it and in obedience to it before its reversal, when it was not super-

seded.  In Freeman on Judgments, section 482, it is said:

But a subsisting judgment, though afterwards reversed, is a sufficient justification for all acts done by plaintiff in enforcing it prior to the reversal.  Thus, if the defendant be taken in execution, the subsequent reversal of the judgment will not render the plaintiff liable to an action for false imprisonment; for the act of imprisonment, when directed by the plaintiff, was sanctioned by a then valid judgment."

And in section  104b the same author says:

"The case of a judgment set aside for irregularity differs materially from that of one reversed upon appeal.  In the latter case the error for which the judgment is ultimately avoided is imputed to the court, and the parties are not left without protection for the acts which they have done, based upon the judgment, and upon their confidence in the correctness of the decisions of the court."

The same principles are laid down in Black on Judgments, sections 170, 355.  In Kaye v. Kean, 18 B. Mon. .847, Kean obtained a mandamus against Kaye, which he refused to obey, and, being imprisoned for disobedience, brought suit against Kean, upon a reversal of the judgment awarding the mandamus, for damages for his imprisonment.  His petition was dismissed.  The court said:

"The judgment of the circuit court was not void, but merely erroneous. . . . So long, therefore, as the judgment remained in force unsuspended and unreversed, it was the duty of the appellant to have rendered obedience to it.  His contumacy subjected him to be proceeded against for a contempt, and as, therefore, there was sufficient cause for his imprisonment, he can not maintain an action therefor against the appellee."

In Clark v. Rodes, 12 Bush, 16, again this court said:

"A judgment is a final and conclusive determination of the rights of the parties to the litigation, and until it shall be reversed, vacated or modified in some one of the modes provided by law the parties can not refuse to obey it; nor can they, by subsequent litigation, indemnify themselves against its legal consequences."

In Fraser's Ex'r v. Page, 82 Ky. 73, an executor who had paid out a fund under a judgment which was not superseded, and afterwards reversed, was held protected by it for acts done in obedience to it while in force. The same ruling was made in McKee v. Smith's Adm'r., 5 Ky. Law Rep., 224; Shultz v. Beatty, 6 Ky. Law Rep. 662; Showalter v. Simmons, 5 Ky. Law Rep. 423; Dudley v. Beatty, 5 Ky. Law Rep., 773.

These cases proceed upon the principle that what was lawful when done does not become unlaw-ful by reason of subsequent acts. The chancellor in entering the judgment in the case referred to, did not act as the agent of either of the parties. The judgment was the act of the law. Neither party could con-trol the court, and neither was responsible for his actions. The law constituted a tribunal to determine the rights of the parties. That determination, proceeding from a pow-er above them, was in no sense their act. A litigant in this court does not procure the judgment entered in any such sense as to render him responsible for the consequence of the judgment, or its reversal by the United States Su-preme Court. We have been referred to no case, and can find none, where an action for damages has been sustained upon the reversal of a judgment for acts done pursuant to it, as for a tort. The fact that there are no precedents for such recovery seems at this day conclusive that it has not

been recognized as admissible by either the bench or the bar. When a judgment is reversed, restitution must be made of all that has been received under it, but no further liability should in any case be imposed. The case of Hays v. Griffith, 85 Ky., 375 [3 S.W., 431, and 11 S. W., 306] is not supported by the weight of authority, and can not, in our judgment, be maintained on principle, so far as it lays down a greater liability. The quotation made from Freeman on Judgments is from a sentence omitted altogether in the last edition. The opinion is supported only by some cases in Illinois and California, and is contrary to the rule followed by the United States Supreme Court and all the other State courts, so far as we have seen. It is also in conflict with the well-settled rule that the court, in ordering or confirming a judicial sale, and the commissioner, in making it, do not act as the agent of the plaintiff. (Bank of U. S. v. Bank of Washington, 6 Pet., 9; Rorer on Judicial Sales, sections 1-12; Foreman v. Hunt, 3 Dana, 621.)

Appeals may be taken from judgments, ordinarily, within two years, but sometimes within five or twenty years, and it would often produce intolerable hardship to hold a litigant responsible for the consequences of an erroneous judgment under such circumstances. The object in having trust estates, including those of decedents, or those assigned for the payment of debts, settled in equity under the direction of the chancellor, is to protect the parties in the payment of the money, as well as to secure to every one his rights. A creditor with a small claim, who moved for a distribution of the fund, would, under the rule referred to, be responsible for the entire fund upon a reversal of the judgment, although he had received only a few dollars of it. Such a rule would destroy all confidence in judgments of courts, and make them the prolific parent, in many cases, of ruinous litigation.

Our system of courts and the principles governing them are derived from the common law. But in England the tribunal was called the *curia* or *court*, because it was held by the king himself originally. The judgments of the court read as the judgments of the king, and when he ceased to hold the court in person, and delegated this function to one of his officers, the character of the judgment was the same. Manifestly, there the subject was not responsible for damages for the act of the king. In this country the power vested in the king vests in the body of the people, and the courts sit as their representative. The law, from principle and policy, requires that full confidence should be given to their judgments while in force. It tends to prevent the troubles incident to the settlement of disputes by the act of the parties, often bringing about breaches of the peace or bloodshed. It is the duty of every good citizen to obey the mandates of the law, and no one should incur any responsibility by doing that which it was his duty to do. It is also the duty of every citizen to uphold the authority of the courts, and maintain respect for their judgments; and when, in doing this, he obeys a judgment of the court, it is a sound and safe rule that no liability for damages should arise therefrom.

The case of Hays v. Griffith is disapproved so far as it may be construed to lay down a different rule.

It remains to determine whether appellee was bound by the original judgment while it was in force.

In Freeman on Judgments, section 174, the rule is thus stated:

"Neither the benefits of judgments on the one side nor the obligations on the other are limited exclusively to parties and their privies. Or, in other words, there is a numerous and impor-

tant class of persons who, being neither parties upon the record nor acquirers of interest from those parties after the commencement of the suit, are nevertheless bound by the judgment. Prominent among those are persons on whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person."

In Herman on Estoppel and Res Adjudicata, sections 150-152, it is said:

"One who is benefitted by the prosecution of an action of which he has notice is to be regarded as a party in interest, although his name does not appear therein.

"A master or principal is in privity with his servant or agent when the latter defends an action in the right of the former, and a judgment is an estoppel to a renewal of the principal or master in the suit on the ground that he is considered the real party, and especially when the principal expressly or impliedly authorized or ratified the acts of the agent, virtually rendering him a party to the proceedings instituted by or against the other.

"In such cases the technical rule that a judgment can only be admitted between the parties to the record or their privies expands so as to admit it when the same question has been decided and judgment rendered between parties responsible for the acts of others."

These conclusions are sustained by Emery v. Fowler, 63 Am. Dec., 627; Hill v. Bain, 2 Am. St. R., 873, [23 Atl., 44]; Robbins v. City of Chicago, 4 Wall., 672,—where many other authorities are collected. This subject was fully considered by this court in the case of Schmidt v. L., C. & L. R. R. Co., 99 Ky., 143, [35 S. W., 135, and 36 S. W., 168],

and under the principles settled in that opinion and in the previous case of Warfield v. Davis, 14 B. Mon., 33, appellee was clearly bound by the judgment against his agent, Miller, in the original action. That action was clearly brought to settle the rights of the parties. It has since been recognized by them as settling their rights. Appellee brought no suit for damages for the filling up of the ditch until that judgment was reversed, and it may be safely assumed that he would not have sued at all if that judgment had been affirmed. The action has proceeded upon the assumption of both parties that the judgment in that case finally settled their rights, and that appellant could not relitigate here the right to stop up the ditch entirely, which was determined against him there. But the estoppel of a judgment is always mutual. If it binds one of the parties, so as to prevent him from showing the truth, it also estops the other. If the judgment referred to did not bind appellee until reversed, then it constituted no estoppel upon appellant in this action, and he might have shown all the facts, and had the jury pass on the question of fact determined there. Appellee has not proceeded with his case upon this theory, but both parties have recognized the judgment in the equity case as settling finally their rights in the ditch. This was, we think, a correct view of the law. The judgment finally rendered in that action is conclusive on both parties as to the right to maintain the ditch; and the chancellor's judgment, until reversed, was equally conclusive, and, not having been superseded, neither can maintain an action against the other for acts done in obedience to it while it was in force.

This question was not before the court on the last appeal of the case, and what was said then must be taken in reference to what was before

[51]

the court. There was no plea then of any facts show-
ing that appellee was party privy to the judgment relied
on in bar, or bound thereby in any way. These facts hav-
ing been pleaded on the return of the case, the question is
now before the court for the first time. Then there had
been a verdict for the defendant. There was no cross ap-
peal, and could be none, and the only question was whe-
ther there had been a fair trial under the issues present-
ed.

The rule is well settled that a question not in issue,
though passed upon in the opinion on a prior appeal, is
not *res judicata* on a subsequent appeal, where the issue
was properly made by pleadings filed after the first appeal.
(See note to City of Hastings v. Foxworthy, 34 Lawy.
Rep. Ann., 344, s. c. [63 N. W., 955]), and cases cited.) Thus
in O'Brian v. Com., 6 Bush, 563, it was held that a discharge
of a juror after the jury was sworn, without the defend-
ant's consent, did not operate to acquit him. But when
this opinion was rendered there had been no plea of former
jeopardy. On the return of the cause to the lower court
the defendant put in this plea, and, having been again
convicted on a second appeal, the former opinion was held
not to include the question, and the defendant was
discharged. 9 Bush, 333, [15 Am. R., 715]. This rule has
the indorsement of the United States Supreme Court, and
seems to us sound, and necessary to the proper administra-
tion of justice. (Barney v. Winona, etc., Railroad Co..,
117 U. S., 228, [6 Sup. Ct., 654].)

The judgment complained of is therefore reversed, and
cause remanded, with directions to the court below to
grant appellant a new trial, to allow the amended answer
"xx-1" and "x-1" and "x-2" to be filed, and for further
proceedings not inconsistent with this opinion.