ALEXANDER HAMILTON LIFE
INSURANCE COMPANY OF
AMERICA, Appellant,

v.

Edwin H. LEWIS and Ida B. Lewis,
his wife, Appellees.

Edwin H. LEWIS and Ida B. Lewis, his
wife, Cross-Appellants,

v.

ALEXANDER HAMILTON LIFE
INSURANCE COMPANY OF
AMERICA, Cross-Appellees.

Supreme Court of Kentucky.

April 22, 1977.

William T. Warner, Wood, Pedley, Stansbury, Rice & Warner, Louisville, for appellant and cross-appellees.

H. Douglas Rouse, Shepherd & Rouse, Carrollton, for appellees and cross-appellants.

PALMORE, Justice.

This is a second appeal in the same proceeding. In *Alexander Hamilton Life Insurance Company v. Lewis*, Ky., 500 S.W.2d 420 (1973), a final order of the trial court denying the insurance company's CR 60.02 motion to vacate a 1970 judgment awarding the Lewises $14,436.79 was reversed and the cause was remanded for further proceedings.

The background is that after their daughter had disappeared and her whereabouts had been unknown for over seven years the Lewises brought suit against the insurance company for the face amount of two insurance policies on her life, relying on KRS 422.130 (Presumption of Death). A judgment was entered in their favor and was

paid by the insurance company. Then the daughter was discovered alive and the company filed its CR 60.02 motion to set the judgment aside. Following a denial of that relief this court held that the company was entitled to it under both CR 60.02(2) [newly discovered evidence] and CR 60.02(6) ["reason of an extraordinary nature justifying relief"].

After setting aside the order denying relief the trial court received evidence bearing on the disposition of the money by the Lewises and upon their present financial condition and entered a "judgment of restitution" directing them to repay $7218.40, being half of the money collected under the original judgment, without interest. The company appeals and the Lewises cross-appeal.

█ It is an accepted principle that money paid in obedience to a judgment that is later set aside must be repaid. *Fitch v. Kentucky-Tennessee Light & Power Co.,* 308 Ky. 652, 215 S.W.2d 91, 92 (1948); *Turner v. Ewald,* 295 Ky. 764, 174 S.W.2d 431, 438 (1943); *Drury v. Franke,* 247 Ky. 758, 57 S.W.2d 969, 972, 88 A.L.R. 917 (1933); *Morgan v. Hart,* 48 Ky. (9 B.Mon.) 79, 80 (1848).

"A person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is reversed or set aside, *unless restitution would be inequitable.* . . ." (Emphasis added.) Restatement, *Restitution,* § 74.

█ The company insists that it is entitled to restitution in full. The Lewises rely on the portion of the Restatement, *Restitution,* § 74, that we have italicized, contending that in the name of "equity" restitution may be denied wholly or in part, as the circumstances warrant, and that in their situation it should be denied entirely. We see no just reason to deny any part of it.

The theory of restitution as a basis for recovery is about as old as the law itself. Though often assumed to be purely an equitable remedy, some of the earliest proceedings both at common law and in equity were founded upon it and were amplified in the course of time. Restatement, *Restitution,* Chapter 1, Introductory Note. The obvious justification for it is that one should not be unjustly enriched at the expense of another. Id., § 1.

In *Bridges v. McAlister,* 106 Ky. 791, 51 S.W. 603, 21 KLR 428, 45 LRA 80, 90 Am. St.Rep. 267 (1899), the accountability of a party for actions taken under authority of a judgment later set aside was discussed at some length. Among other things the court concluded as follows: "When a judgment is reversed, restitution must be made of all that has been received under it, but no further liability should in any case be imposed." Id., 51 S.W. at p. 605. Our attention has not been directed to any precedent in this jurisdiction for relieving a party of the duty to restore all of the money paid to him under a judgment subsequently vacated. Understandably, of course, the receipt and disbursement of money by someone in a fiduciary capacity could very well present a different case, but when the party who received the money by authority of the judgment has spent some or all of it at his own volition and for his own ends, we find it difficult to accept the proposition that equity diminishes his accountability.

In this instance the Lewises spent $1935 to pay off a note, $1800 for improvements on their house, $3,000 for educating their son, $3155 for automobiles, and about $4800 for medical expenses and care of the returned daughter. They now have only about $6,000 in cash deposits, but their net worth substantially exceeds the amount received under the judgment against the insurance company.

According to § 142(1) of the Restatement, *Restitution,* "The right of a person to restitution from another because of a benefit received is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require the other to make full restitution." The *Comment* following that section explains that there is no such change in circumstances "where the money is used for the payment of living expenses, or even

used to make gifts, unless such expenses were incurred or gifts made because of the receipt of the money and the amount of such payment was of such size that *considering the financial condition of the payee* it would be inequitable to require payment." [Emphasis added.]

The illustrations following that commentary do not reveal to our satisfaction a workable criterion for determining what is "inequitable." "Equity" is a broad term, allowing for as many different definitions as there are people who are familiar with it. Often overlooked, however, is the simple fact that both equity and equality are derived from the same word and have much more in common than a similar sound. We think of equity as an implement of sympathy and compassion, but its real meaning is more akin to equality. What is fair for one must be fair for the other. In this case, is it fair that the stockholders of the insurance company lose $7200 because the Lewises have spent the money? We do not think so. It was not the insurance company, but the Lewises, who claimed their daughter was dead, and it is not at all unjust to hold that when they took the money they had to do so at the risk of having to repay it if their claim proved to be unfounded, as it did. We perceive nothing in this record to raise an equitable defense in mitigation of the demand for restitution.

█ On the question of interest, there can be no doubt that the insurance company's claim for restitution, though quasi-contractual in nature, was "liquidated" and that interest ordinarily is recoverable as a matter of right on a liquidated claim. *Shanklin v. Townsend*, Ky., 434 S.W.2d 655, 656 (1968). Interest may be allowed also on the basis of an implied contract, or quasi-contract, and probably should be if the money or property has been used for profit-making. *Curtis v. Campbell*, Ky., 336 S.W.2d 355, 361 (1960); *Henderson Cotton Mfg. Co. v. Lowell Machine-Shops*, 86 Ky. 668, 7 S.W. 142, 145 (1888).

In *Jackson County v. United States*, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939), the United States, in behalf of an Indian to whom land had been patented, sued Jackson County, Kansas, to recover taxes paid under a fee-simple patent that had been later cancelled. In holding that interest was not recoverable, the court had this to say with respect to actions based on quasi-contractual obligations:

"The cases teach that interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable."

The dispositive equitable circumstance favoring the county in that case was that during the time it was collecting the taxes it had no reason to know that a subsequent event would result in their having been unauthorized. "The true ground upon which to put the allowance of interest is the fault of the party who is to pay the debt. If he has made default of payment, then, *ex aequo et bono*, he should reimburse the creditor for keeping him out of the use of his money. He should render an equivalent for the use of what is not his own." *Henderson Cotton Mfg. Co. v. Lowell Machine-Shops, supra*, at 7 S.W. 145.

When an innocent party uses the money or property of another in reliance upon a final unappealed judgment that says it is his, it can hardly be said that he is at fault unless and until he is put on notice of circumstances that justify or call for setting the judgment aside. In this case the Lewises learned on July 25, 1971, that their daughter was still alive. A private investigator employed by the insurance company discovered it on August 25, 1971. On the basis of these facts we are of the opinion that interest on the amount recoverable by the insurance company should run from July 25, 1971.

The judgment is reversed on the appeal and affirmed on the cross-appeal, with directions that a new judgment be entered in conformity with this opinion.

All concur.