# FISHER v. BROWNING et al.

### [66 South. 132.]

1. ADOPTION. *Rights of adopted children. Inheritance. What law governs. Rules of decision. Comity. Judgment. Conclusiveness. Res judicata.*

   Under Code 1906, section 542, providing, that an adopted child shall be entitled to all the benefits proposed by the petitioner to be granted and conferred in the petition for adoption, an adopted child cannot take property by descent from its adopting parents unless such right is specifically given to it in the petition for adoption and in the decree of the court in response to it.

2. INHERITANCE BY ADOPTED CHILDREN. *What law governs.*

   Since the descents of lands is governed by the *lex rei sitae*, and since lands in Mississippi must descend according to the laws of Mississippi and since under the laws of this state an adopted child may not inherit from foster parents unless so specified in the petition for adoption and the decree of the court in response thereto, where a child was legally adopted in Kentucky under such proceedings as entitled it to inherit real property in that state, but which proceedings did not give it such rights in Mississippi, where its foster parents resided, in such case the adopted child had no interest in the land of its foster father in Mississippi, which on his death without natural children descended to his widow.

3. ADOPTION. *What law governs. Rules of decision. Comity.*

   Under the laws of comity the courts of Mississippi are not bound to recognize the rights flowing from the statute created by adoption in Kentucky if its laws on the subject of adoption and the rights flowing from it are inconsistent with our own law on that subject.

4. JUDGMENT. *Conclusiveness. Res judicata.*

   Where in a suit for partition, the widow of one of the heirs was complainant and her adopted daughter a defendant, and in that suit the widow voluntarily submitted her rights, as against such daughter, to adjudication, and the court having jurisdiction of the parties and subject-matter erroneously decreed that the adopted daughter was entitled to inherit a part of the land sought to be partitioned, from her father, such decree not having

been appealed from, and the time for appeal having expired, was conclusive and *res judicata* of that issue.

5. ADOPTION. *Adopted child. Inheritance.*

Property inherited by an adopted child goes to the child in fee simple, and upon its death the property descends according to the law of descent and distribution of this state, which would be its blood relatives.

APPEAL from the chancery court of Sunflower county. HON. E. W. THOMAS, Chancellor.

Bill of Mary Browning and others against J. B. Fisher. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Flowers, Alexander & Brown,* for appellant.

*D. M. Quinn, J. Holmes Baker* and *S. F. Davis,* for appellee.

OWEN, Special Judge, delivered the opinion of the court.

On the 15th day of July, 1901, Church W. Rule and his wife Lula A. Rule, who were then living and having their domicile in Sunflower county, Mississippi, and then being without children, and being in the state of Kentucky, presumably on a visit there, in Kentucky, on said date signed what is called in the record, "articles of adoption." This was a contract merely, signed jointly by Church W. Rule and his wife on the one part and the Louisville Baptist Orphans' Home, by its president, on the other part, by which Church W. Rule and his wife, Lula A. Rule, are said to have adopted a child, then about three years of age, and an inmate of said institution, named Lula May Browning. By this contract the said Rule and wife obligated themselves to adopt the said infant, Lula May Browning, "and do hereby adopt said Lula May Browning, and covenant with said Louisville Baptist Orphans' Home that said Lula May Brown-

ing shall bear from this time forward the same legal relation to them as if she had been born unto them, and were their child, especially as to such property as would descend to her were she their child.'' After signing said articles of adoption, Church W. Rule and his wife took the said infant to their home in Sunflower county, Mississippi, and there it occupied the relation of a child to them, and was treated by them as their child, up to the time of their deaths, respectively.

It appears that the Louisville Baptist Orphans' Home was chartered and incorporated by an act of the general assembly of Kentucky, approved January 28, 1870 (Laws 1869-70, ch. 197), and amended by an act approved January 31, 1880 (Laws 1879-80, ch. 108), and that by virtue of its charter it was invested with all the rights of parents and natural guardians of any child committed to its care, and that it was also empowered to permit any suitable person to adopt any child in its custody and control as their own child upon proper covenants in writing being executed by such persons and its president, and acknowledged or proven in the clerk's office of Jefferson county, Kentucky, as deeds may be, and by the amendment of 1880 to this charter it was provided that by the articles of adoption, when executed and recorded, ''such child shall become the heir at law of such person so adopting him or her, and be as capable of inheriting as though he or she were the child of such persons,'' etc. It appears also that the supreme court of Kentucky has held this act of incorporation constitutional, and that when this contract was executed it amounted there to a complete adoption, and authorized the child adopted to inherit as if it were the natural child of its parents.

We remark that the present Constitution of Kentucky has a provision similar to section 90 of our own Constitution, which forbids that any special laws shall be passed on the subject of adoption, and other things, but this Constitution of Kentucky was adopted after the act of incor-

poration aforesaid of the Louisville Baptist Orphans' Home, with a saving clause, and we do not think that it repealed that act.

On August 9, 1898, Mrs. Mary J. Rule, the mother of Church W. Rule, living in Sunflower county, Mississippi, died and left a considerable body of land, which descended on her death to her children, two of whom were then living, and to the heirs of the two of her children then dead. Mrs. Mary J. Rule was survived by one son, J. W. Rule, and a daughter, Emma. Her son, J. H. Rule, who died after she did, was survived by his widow, Mary Maude Rule, and her daughter, then an infant, Johnnie Floyce Rule, and her son, Church W. Rule, who died after his mother did, was survived by his widow, Lula A. Rule, and the adopted child, Lula May Browning Rule. On March 2, 1903, J. W. Rule, the surviving son of Mrs. Mary J. Rule, and the widows of his two deceased brothers, to wit, Mrs. May Maude Rule, the widow of John Rule, and Mrs. Lula A. Rule, the widow of Church W. Rule, filed in the chancery court of Sunflower county, Mississippi, a bill to which they made defendants Emma Rule, the surviving daughter of Mary J. Rule, an adult, and the two minors, Johnnie Floyce, the daughter of Mrs. May Maude, the widow of John Rule, and Lula May Browning Rule. The object of this bill, and its sole purpose was to partition the lands of Mrs. Mary J. Rule between her surviving son and daughter and the heirs of her deceased sons, J. W. Rule and Church W. Rule, and the bill prayed for a division of said lands of Mrs. Mary J. Rule into four parts; that is, one part might be set aside to J. W. Rule, and another part to Emma Rule; one part to the widow of John H. Rule, and her daughter, Johnnie Floyce Rule, jointly, and the fourth part to be set aside to Lula A. Rule, and the child, Lula May Browning Rule.

The bill of complaint thus filed contains the following statement, with reference to the position of Lula May Browning Rule:

"The said minor, Lula May Browning Rule was never adopted by any proceedings in court, according to the laws of the state of Mississippi, but the said Church W. Rule and his wife, Lula A. Rule, made their certain contract in writing with the Louisville Baptist Orphans' Home, bearing date the 15th day of July, 1901, executed in triplicate, and signed by said Church W. Rule and Lula A. Rule and the said Louisville Baptist Orphans' Home. By the said contract it was agreed that the said Church W. Rule and his wife, Lula A. Rule, should adopt, and they did thereby adopt, the said minor, whose name at that time was Lula May Browning, and that the said Lula May Browning should, from that time forth, bear the same relation to the said Church W. Rule and his wife, Lula A. Rule, as if she had been born unto them and were their child, especially as to such property as would descend to her if she were their child. Complainants herewith file a copy of this contract as part of this bill, and mark the same 'Exhibit A.' Complainants allege that from that time up to the time of the death of the said Church W. Rule, the said Church W. Rule and his said wife have had the care, custody, and control of said minor, and the said child is now in the care and custody of said Lula A. Rule. Your complainants are advised that by said articles of adoption, although there had been no proceedings in the courts, the said child is entitled to have a child's part in the said estate of Church W. Rule, but complainant Lula A. Rule, submits this question for decision of this court. The said Lula A. Rule is now the legally appointed guardian of the said Lula May Browning Rule; the said Johnnie Floyce has no guardian. It is asked that your Honor may adjudicate whether the said minor, Lula May Browning Rule, has an interest in said estate."

The suit in which this bill was filed is called cause No. 1100 in the record, being so numbered on the chancery court docket of Sunflower county.

The prayer of the bill, among other things, is:

"That your honor may adjudicate whether the said minor, Lula May, has an interest in said estate . . . and one of said shares to the said Lula A. Rule and her adopted minor child, Lula."

Guardian *ad litem* was appointed for the minors, including Lula May Browning Rule, and answered, submitting the interest of the minors to the protection of the court, and praying that the allegations of the bill be required to be substantiated by strictly legal proof. The chancellor rendered a written opinion, in which he held that Lula May Rule was in fact adopted by Church W. Rule and his wife, and as such adopted child inherited one-half of the estate and lands in Mississippi of Church W. Rule, and in the decree of partition set apart one of the four shares to Lula A. Rule and her adopted child, Lula May Rule. From this decree of the chancery court in the partition proceedings, cause No. 1100, there was never any appeal, and the right of appeal is barred by the statute of limitations. Church W. Rule died intestate on the 7th day of February, 1903, and the infant, Lula May Browning Rule, died on the 29th day of November, 1905. Mrs. Lula A. Rule, after the death of her husband, Church W. Rule, married the appellant, J. B. Fisher, who claims all the land as the only heir of his wife, Lula A. Rule Fisher, who had died since the death of Lula May Browning Rule, and the appellant claims that when the child died, it had no interest in the lands of Church W. Rule, and inherited nothing from him, but that if it did inherit an interest in the lands of Church W. Rule, that upon the child's death this land descended to its adopted mother, Lula A. Rule, and at her death descended to him, appellant. The bill in the present case was filed by appellees, claiming to be the brothers and sisters by the blood of Lula May Browning Rule, and claiming that as the adopted child of Church W. Rule she inherited half of his lands upon his death, and upon the death of Lula May

Browning Rule the said lands descended to them as broth-
er and sisters by blood, and did not descend to its adopted
mother, Lula A. Rule, and a decree made for appellees
is appealed from to this court.

There are many questions in the case, and some of them
are of very great importance and are of first impression
in this court, and we have carefully and laboriously con-
sidered the same.

The statutes of descent and distribution in Mississippi
make no provision for the descent of the property of
adopted children.   There is no law in Mississippi which
gives the right of inheritance to an adopted child, except
section 542 of the Code of 1906, which was copied from
the previous Code of 1892, the only change being made in
the statute was with reference to the court in which the
petition for adoption should be filed.   The principal ques-
tions presented by the record for solution are: First,
was Lula May Browning Rule so adopted under the laws
of Kentucky as to make her capable of inheriting the
lands of Church W. Rule in Mississippi?   Second, is
Mississippi bound by the law of comity to recognize the
*status* of adoption of a child, which *status* is created in
Kentucky, and give effect to it, and to the legal rights of
that *status* in Kentucky here in Mississippi, to the extent
of holding that the child has capacity to inherit lands lo-
cated in Mississippi?   Third, if the second proposition
is answered by the court in the negative, then is Mrs.
Lula A. Rule and those in privity with her and claiming
under her precluded, or estopped, by the decree of the
chancery court made in cause No. 1100, which adjudicated
that the child was adopted in Kentucky, and by virtue of
that adoption it had capacity to inherit lands in Missis-
sippi?   Fourth,   assuming   that   the   child   was   legally
adopted in Kentucky, and that the decree in cause No.
1100 was *res judicata,* then whether or not on the death
of the child the property descended to its blood relatives,

strangers to the Rule family, or to its adoptive mother, Mrs. Lula A. Rule.

There can be no dispute about the fact, we think, that under the laws of Kentucky, Lula May Browning Rule was so adopted as to be capable of inheriting anything that Church W. Rule owned in the state of Kentucky. In Mississippi, unlike in the state of Kentucky, under this special act of the general assembly of Kentucky, a child may be partially adopted, or it may be completely adopted, but under the laws of the state of Mississippi it only inherits and gets those benefits and rights which are specifically given to it in the petition required in adoption proceedings, and in the decree of the court in response to it.

There can be no dispute that the descent of lands is governed by the *lex rei sitae,* and that the lands in Mississippi must descend according to the laws of Mississippi, and we, therefore, hold that the lands of Church W. Rule in this state upon his death without natural children descended to his wife, Lula A. Rule, and no interest in it descended to Lula May Browning Rule.

There are very many respectable authorities holding that adoption in one state confers no right of inheritance to lands in another state, and that inasmuch as adoption was unknown to the common law, and it being purely a statutory right, those statutes have no extraterritorial effect.   See *Smith* v. *Deers, Adm'rs.,* 34 Pa. 126, 75 Am. Dec. 641; *Doe* v. *Varnell,* 6 Varn & C., 438, 6 Bing. N. C. 385; *Linger* v. *Linger,* 45 Ala. 410; *Barnum* v. *Barnum,* 42 Md. 307; *Beauchamp* v. *Bertig,* 90 Ark. 351, 119 S. W. 75, 23 L. R. A. (N. S.) 659; *Brown* v. *Finley,* 157 Ala. 424, 47 So. 577, 21 L. R. A. (N. S.) 679, 131 Am. St. Rep. 68, 16 Ann. Cas. 778; *Shearer* v. *Weaver,* 56 Iowa, 578, 9 N. W. 907.

We recognize that the weight of authority and the trend of modern decisions is to the effect that every other state will recognize the *status* of the state creating

it, and will give effect to it just as if that *status* were created under the law of the state where it is invoked, but provided, always, that the *status* and the rights flowing from it are created by the laws of the state which are in harmony with and consistent with the laws and public policy of the state where it is invoked, and that therefore Mississippi will recognize the *status* of the child, created in Kentucky, as the adopted child of Church W. Rule, and will enforce all the rights of the child in that situation here, provided the rights flowing from that adoption in Kentucky and the laws of that state on the subject are not inconsistent with or opposed to the laws or public policy of this state on the same subject.

We repeat that under the law of comity we are not bound to recognize the rights flowing from the *status* created in Kentucky if its laws on the subject of adoption and the rights flowing from it are inconsistent with our own laws on that subject.

We do not believe, however, that this child was capacitated by the adoption in Kentucky to inherit lands in Mississippi, because the laws of Kentucky are inconsistent with and antagonistic to our Constitution and laws on the same subject, and to the public policy of Mississippi on that subject, as such public policy is found in our statutes and Constitution, and for that reason we do not believe that Mississippi is bound to recognize this adoption by contract, as it was made in Kentucky, to be valid and binding in Mississippi as to confer upon the child the capacity to inherit lands in Mississippi. Its *status* as an adopted child of Mr. and Mrs. Rule may be recognized here without recognizing its capacity to inherit lands, which is a wholly different thing. Under the charter of the Louisville Orphans' Home the adoption was a complete adoption, or no adoption at all, whilst in Mississippi, there may be an adoption without the right to inherit lands, and without the right of heirship at all. Again, the laws of Mississippi require the consent of the mother

107 Miss. 47

and father, or the guardian, to the adoption, and any kind of an adoption requires the solemn sanction of a decree of the chancery court. No such thing is known to the laws of Mississippi as adoption by contract, nor can it be done by special act of the legislature of Mississippi, by reason of section 90 of our Constitution. The proceedings for adoption followed in Kentucky by the contract, etc., if pursued in Mississippi, would undoubtedly be held to be null and void, and before a child adopted even in Mississippi can inherit lands here, the jurisdictional fact must be asserted in the petition that heirship is one of the benefits to be conferred by adoption. See *Beaver* v. *Crump,* 76 Miss. 36, 23 So. 432.

Our own court in this case, in construing section 542 of the Code of 1906, said:

"This statute is wholly unlike those of most of the other states of the Union and is similar in some respects to those of only two other states, so far as we have been able to ascertain."

And in this case it was held that the adopted child could not inherit lands in this state unless heirship be one of the benefits proposed to be conferred by the petition filed for adoption.

"The adoption of this class carries with it only the specific gifts, grants, bequests, and benefits proposed in the petition."

The only way to interpret the statute of descent and distribution in Mississippi by way of adoption is that the adoption shall be made in accordance with the laws of the state of Mississippi. This is the clear public policy of our state by its Constitution, laws, and decisions, and what could not be done in Mississippi directly, to create capacity to inherit lands here, could not be done in Mississippi indirectly, and if this contract or adoption would be void under the laws of the state of Mississippi, and is inconsistent with our public policy, then capacity cannot

be given to inherit lands here by this indirect proceeding in the state of Kentucky.

We hold that Mississippi would not be bound by any law of comity to give effect to this method of inheritance of lands here where the *status* of adoption was created by a state whose laws and public policy were so inconsistent and antagonistic to our own laws and Constitution, and we hold, therefore, that Lula May Browning Rule inherited nothing of the lands of Church W. Rule in Mississippi, by reason of her so-called adoption in Kentucky.

As to the third proposition, we are of opinion that the decree in cause No. 1100 was *res adjudicata.* Lula A. Rule was a complainant in this bill and Lula May Browning Rule was a defendant, and the complainant submitted her rights to the court for adjudication. There was a question as to whether Lula May Browning Rule inherited this property, and she was therefore a necessary and proper party. The court had jurisdiction of the subject-matter and the person, and its decree was therefore, we think, *res adjudicata.* We think the authorities are too uniform and too numerous to cite that a judgment of a court in a matter within its jurisdiction, however erroneous, is final and conclusive if not appealed from. The opinion of the chancellor and his decree in cause No. 1100 was clearly erroneous, and would unquestionably have been reversed had appeal been taken to this court, but Mrs. Lula A. Rule, the complainant and adopted mother of Lula May Browning Rule, did not appeal from this decree and accepted it as binding on her, and we think that when she failed to appeal it was *res adjudicata,* and estopped her and her privies from afterwards questioning it.

The fourth proposition, we think must be decided against appellant's views. We cannot subscribe to the doctrine that an adoptive parent inherits from an adopted child to the exclusion of its blood relatives. We think that the property inherited by an adopted child goes to

the child in fee simple, and upon its death the property descends according to the law of descent and distribution of this state, which would be to its blood relatives. We are referred by counsel to the case of *Humphries* v. *Davis,* 100 Ind. 274, 50 Am. Rep. 788, decided by Judge ELLIOTT, in which Judge ELLIOTT holds that the adoptive parent inherits from an adopted child to the exclusion of the natural mother or blood relatives. The law on adoption of children is in derogation of the common law, and unless the statute of the state provides for descent and distribution from an adopted child to go to the adoptive relatives in preference to the natural relatives, we are of the opinion that the natural relatives or blood kin inherit in preference to the adoptive kin. The opinion in *Humphries* v. *Davis* follows the civil law. The civil law was pressed on this court by counsel in *Beaver* v. *Crump,* 76 Miss. 34, 23 So. 432, and this court refused to follow the civil law and adopt the views adopted by Judge ELLIOTT in *Humphries* v. *Davis*, and we think that was the correct view, and therefore hold that the property upon the death of Lula May Browning Rule was inherited by her blood brothers and sisters, and that it did not go to her adoptive mother, Mrs. Lula A. Rule Fisher.

The case will therefore be affirmed.

*Affirmed.*

MILLER, Special Judge (dissenting).

I cannot concur with my Brethren in this case in answering the third and fourth propositions here for solution.

I do not believe that the decree in the proceeding for partition of the lands of Mrs. Mary J. Rule in cause No. 1100, in which it is contended that the legality of the adoption of Lulu May Browning in Kentucky was determined, and also that her legal rights flowing from that adoption, gave her capacity to inherit an interest in the lands of Church W. Rule in Mississippi.

I think this decree was not *res judicata* of Lula May Browning's right to inherit the lands in Mississippi, because there never was an issue made up in that case, or joined in it, upon which the court had jurisdiction or power to make any such determination. I fully recognize the rule, as settled, of course, that the judgment of a court of competent jurisdiction, however erroneous, is final between the parties to that litigation, but I know, also, that on this much misunderstood question there are limitations upon the power of the court to bind parties to a record by way of *res judicata.*

In the case of *Charles* v. *White*, 214 Mo. 187, 112 S. W. 545, 21 L. R. A. (N. S.) 481, 127 Am. St. Rep. 674, a decision was made which best illustrates my views upon this limitation of the general doctrine announced by the majority of the court in this case, and which best sustains my view that the case at bar is an exception to such general rule, as well established as the rule itself. In that case, it is stated, quoting from the opinion of Chief Justice BEASLEY in *Munday* v. *Vail*, 34 N. J. Law, 418:

"Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this, there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs. Second, the proper parties must be present. . . . Third, the point decided must be in substance and effect, within the issue. . . . A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet, I cannot doubt that upon general principles such a defect must avoid a judgment. It is impossible to concede that because A. and B. are parties to a suit, a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons, by becoming suitors, do not place themselves for all purposes under the control of the court, and

it is only over those particular interests which they choose to draw in question that a power of judicial decision arises.''

Where the court proceeds beyond the allegation of the pleadings and the prayer for relief, and decrees a matter between parties defendant, its judgment to that effect is void and open to collateral attack.  Unless the defendants (parties) contest an issue with each other upon the pleadings between themselves and the plaintiff, or upon cross-pleadings, between themselves, the judgment will not be *res adjudicata* in subsequent litigation between them.

This limitation upon the general and much abused statement of the general rule that a court of competent jurisdiction by its judgment forever settles, by way of *res judicata,* all questions that might have been litigated between the parties is approved by every respectable court where it has been invoked, and by the supreme court of the United States.

I repeat that it is just as well settled that, unless there was an issue between the parties that, although the court had jurisdiction of the subject-matter and of the parties, its judgment as to questions outside of and beyond the issues is mere *obiter dictum,* and without power of the court to determine them and bind parties by way of *res judicata.*

The only purpose of the petition in cause No. 1100 to partite the lands of Mrs. Mary J. Rule was to divide it into four parts, giving one part to each of her four heirs, and to the heirs of those of them deceased.  There never was any effort to divide the lands of Church W. Rule between his widow and the so-called adopted child.  The lands of Mrs. Mary J. Rule were only divided into four parts, as they would have been if the child had not been made a party to the record.  The relief asked for was to divide the lands of Mary J. Rule, and not to divide the lands of Church W. Rule, and in fact no partition of the

lands of Church W. Rule was ever made. I know the
court had jurisdiction, under section 3525 of the Code of
1906, to determine every interest in the lands, and if
there had been an issue in the case upon which the court
could have predicated its determination that the child
was so adopted in Kentucky as that it was entitled to in-
herit an interest in the lands of Church W. Rule in Mis-
sissippi, it would have been *res judicata,* but I repeat
that judgments are *res judicata* only of those things
*necessarily* and *directly* in issue, and which have been
fairly heard and tried and determined. See Black on
Judgments, secs. 611, 614; *Land* v. *Keirn,* 52 Miss. 341;
*Shuler* v. *Murphy,* 91 Miss. 518, 44 So. 810, 14 L. R. A.
(N. S.) 333, 124 Am. St. Rep. 708; *Lincoln National Bank*
v. *Virgin,* 36 Neb. 735, 55 N. W. 218, 38 Am. St. Rep.
347; *Bridges* v. *McAlister,* 106 Ky. 791, 51 S. W. 603, 45
L. R. A. 800, 90 Am. St. Rep. 267.

In the case of *Shuler* v. *Murphy* one of the tenants in
common had filed a petition for partition, and asserting
that each of eight heirs were entitled to a share of the
lands which were asked to be sold for partition, and the
chancery court, with jurisdiction of all the parties, sol-
emnly adjudicated that one of these shares belonged to
one Taylor, and the lands were sold and the sale con-
firmed and the money ordered distributed according to
the decree of the court, and the creditors of Taylor ap-
peared on the scene and garnished the commissioner and
sought to have Taylor's interest applied to their debt,
and an issue was made up between Taylor's two sisters,
who claimed that Taylor had sold them their interest in
the land before the decree of partition was made and the
creditors of Taylor; and this court held that that decree
was not *res judicata* against these sisters, who were par-
ties to that proceeding for partition, and who really and
in fact owned Taylor's interest in the lands before the
decree for partition was made, but that issue was not
made up in the case, and they asserted no claim to it in

that partition proceeding. That case is to my mind decisive of this case by this court.

It is a mistake to assume that there was an issue disclosed by this record on the question of whether or not Lula May Browning was so adopted in Kentucky as to confer capacity upon her to inherit lands in Mississippi from her adoptive father. It never was affirmed in that petition in cause No. 1100 that Lula May Browning Rule did inherit by reason of the adoption an interest in Church Rule's land in Mississippi. The petition simply alleges, which is just as near as that affirmation was made in the petition, that Mrs. Rule *"was advised* that the child had been lawfully adopted," but, *"submitted this question to the court."* And the court, responding, said that, inasmuch as he had been requested to decide this question of whether the child was lawfully adopted, proceeded to hold that it was so adopted, and had capacity to inherit lands in Mississippi. The matter claimed to be *res judicata* here was never affirmed on the one side or denied on the other. The child was represented by a guardian *ad litem,* who filed a mere formal answer, and affirmed nothing, claimed nothing, and denied nothing, but merely submitted the interests of the child to the court. I repeat, without an issue, and a trial and determination of that issue, the decree of the chancellor in cause 1100 on the subject of the child's capacity to inherit lands in Mississippi as absolutely void and binding upon nobody.

It will not do to say that Mrs. Rule filed the petition and herself asked to be done just what was done. That suggestion would be pertinent if an estoppel *in pais* were claimed against Mrs. Rule, but there is no predicate for an estoppel *in pais* against Mrs. Rule here, on account of her attitude assumed in that partition proceeding because that act on her part was purely voluntary and without consideration, and nobody is claiming in this case that they have acted upon it to their prejudice, and therefore

estoppel does not lie against Mrs. Rule, because its essential principle is lacking; that is, that somebody has parted with his money on the faith of her attitude, and would be injured by her assertion of a right to the lands. These blood brothers and sisters of Lula May Browning claiming these lands certainly have not been injured. The real question in the case is not whether Mrs. Rule would be estopped, which she would not be of course, but the question is, did the adjudication of the chancellor of the child's capacity to inherit lands in Mississippi become *res judicata*. I say not, because his determination of that question was without an issue in the case to rest upon.

As to the fourth proposition: I differ widely with my Brethren. I agree with the majority of the court that the adoption of Lula May Browning by contract in Kentucky did not give her capacity to inherit lands in Mississippi, for the reason stated by the court, but the logic of the court's opinion is that, whilst she was not so adopted as to inherit lands in Mississippi, yet by way of *res judicata* she was so adopted as to inherit lands in Mississippi, and, if that be true, that by way of *res judicata* or otherwise she inherited, as the adopted daughter of Church W. Rule, an interest in his land in Mississippi, then she must stand as to those lands as the adopted daughter of Church W. Rule. I hold that by that adoption she became, in truth and in fact, the child, as if of the blood, of Church W. Rule and his wife, Lula A. Rule, and upon that child's death her adoptive mother inherited her lands, and not her blood kin.

My Brethren take the view that the statute of adoption, or the *status* of adoption, however created, only had the effect of qualifying the child to inherit from its adoptive parents, and did not give the adoptive parents the corresponding right to inherit from it.

On this subject, there is almost a hopeless conflict of authority in the adjudged cases. A number of the states

hold to the view, as best expressed by one of the greatest lawyers and greatest judges America has ever known, Judge ELLIOTT, that the act of adoption in effect establishes the blood relation between the adoptive parents and the adopted child, and that the child stands as to the property of the adoptive family as if it had no blood kin from whom it has been cut off by the act of adoption, and that upon its death the property descends to its adoptive kin, that is, the property it gets in the adoptive family, and not to its blood relations. This, I think, is the more just, reasonable, and humane construction that can be given to our statute of adoption. We do not by this view take away from the child the capacity to inherit from its blood relations, or to give them the right to inherit from it as to property of its family of the blood, but, as to the property it acquires in the adoptive family, the law of descent and distribution, when it speaks of "parents" as heirs, or "brothers and sisters" as heirs, has reference to the members of the adoptive family, so far as the property of that adoptive family is concerned.

We add nothing to the law of descent and distribution by this view, and we take nothing away from the law of descent and distribution, which is, of course, aimed at and founded in the natural family relations, but we simply give a construction to our statute on the subject of adoption that its purpose by full adoption was to confer upon the child the right to inherit from its adoptive parents and give them the corresponding right to inherit from it. This room for construction is furnished by the fact that there is no law in Mississippi, that is, no statute law, which determines the right of inheritance from an adopted child at all, and the courts by decision must establish a rule that is most just and humane and reasonable and consistent with the policy of encouraging adoption, rather than discouraging it.

There is absolutely nothing in the statute of adoption in this state which compels us to take the view that the

blood relative must inherit from the adopted child rather
than its adoptive relatives, and I will not give my con-
sent to sanction a rule so unjust as the rule contended
for by the majority of this court. If the child is the law-
ful child of the Rules they are its lawful parents. It
would be monstrously unjust to suppose that the legis-
lature ever intended by section 542 of the Code of this
state to say that after the Rules had taken this little child
in its tender infancy with the consent of its natural
mother and father, if it had any, who had utterly aban-
doned it and cast it out, and by the law of adoption were
absolved from all further obligation to it, and that the
Rules had assumed all the obligations, at law, of father
and mother, and bound themselves for its support, main-
tenance, and education, as they were bound if they were
its adoptive parents, and bestowed upon it their affec-
tions and their care, and educated it, and then by the
death of Mr. Rule it got a large estate in his lands, and
upon its death those lands should go to its natural broth-
ers and sisters rather than to Mrs. Rule, its adoptive
mother, and is a rule of law and of construction of that
statute, to which I will never give my consent. I am
adopting the result of the rule of the civil law, from which
the statute of adoption is taken. Under the civil law,
the adoptive parents are its parents, rather than its nat-
ural parents. The adoption was unknown to the com-
mon law.

The view I have adopted as expressed by Judge EL-
LIOTT in the case of *Humphries* v. *Davis*, 100 Ind. 274, 50
Am. Rep. 788, has been affirmed by a very respectable
number of the supreme courts of the states, which will
be found in the briefs of counsel for appellant, and that
view we think has been repudiated by the states of Wis-
consin, Ohio, and Missouri, and the reasoning upon which
they reached the conclusion that was reached by the ma-
jority of the court in this case I cannot approve. Of
these cases holding as the majority holds in this case that

the blood kin inherit from the adopted child upon its death rather than its adoptive mother, Mr. Freemen, who has made of the American State Reports one of the greatest law publications of the day, and who was recognized as the foremost annotator and one of the foremost lawyers of his day in America, in the notes to *Van Matre* v. *Sankey,* 39 Am. St. Rep. 229, said:

"The vice of these decisions, in our judgment, lies in the fact that the courts making them gave too strict a construction to the statutes of adoption, and were unwilling to concede that such statutes had any other object than to confer the benefit of heirship to the adopting parent upon the child adopted. The purpose of these statutes we conceive to extend further than this, and, in effect, to take the child from its parents by birth, and to give it to the parents by adoption, and to create, as between it and such parents, the reciprocal rights and relations of parent and child, and to give to the former both the incidental and the direct advantages of parentage; and we, therefore, think that, upon the death of such child, intestate, and leaving an estate which by statute, vests in its parents, the word "parents," as thus used should be deemed to designate the adopting parents, rather than the parents by birth; for under the law, it is the former, rather than the latter, who occupy the relation of parent to the child at the time of its death."

With Judge ELLIOTT and Mr. A. C. Freeman, I am in hearty accord, and conceive myself to be in very respectable company.

In find that in the state of Kentucky, the supreme court of that state in the case of *Lanferman et al.* v. *Van Zile,* 150 Ky. 751, 150 S. W. 1008, adopts, in fact, Judge ELLIOTT's view. Kentucky is one of the states holding as a construction of its statutes of adoption that:

"By the event of adoption," the adopted child "becomes the legal child of the adopting parent, . . . in the same light as a child born in lawful wedlock. . . .

The estate of the natural child, which he inherits from his parents, is defeated by his death in infancy, without issue, and the property then goes back to the kindred of that parent. The adopted child, inheriting as though he were the child of his foster parent, takes subject to the same limitation; and when he dies in infancy, and without issue, the property under the statute descends to the kindred of that parent from whom he received it.''

It is indeed a strange and illogical conclusion, as it seems to me, to which the majority of the court have arrived in this case; this child had its *status* as an adopted child fixed by the laws of Kentucky, under which laws, as above stated, if it had died there, as it died here, the property it inherited from Mrs. Rule would have gone to Mrs. Rule, rather than to its blood kin, and yet by way of *res adjudicata,* and otherwise, the court has given it by inheritance an interest in the lands of Church W. Rule, and yet refuses to enforce that legal result flowing from the *status* created thus in Kentucky, to wit, that upon its death without issue and intestate its property does descend to its adoptive mother, Mrs. Lula A. Rule.

The logic of the majority of the court is incomprehensible to me. If we are bound to enforce its *status* as an · adopted child in Kentucky, then it seems clear to me that we ought to enforce all the legal rights of that *status* that would flow in the state of Kentucky upon its death.

It is so monstrously unjust to conceive of a man laboring and accumulating a fortune and dying and leaving it to his wife and an adopted child, and that upon its death before the death of its adoptive mother the adopted child's relatives, who had never been adopted by the adopting father and mother, and who are strangers to their blood, should take the property of the child thus inherited in the adoptive family, rather than its adoptive mother as to shock my sense of justice and fair play, and I refuse to yield my assent to any such construction of the statute of adoption.

This is a very important matter, and this case is of first impression in this court, and I have written this dissenting opinion in the hope that the legislature will, by positive statute overturn the conclusion that has been reached by the majority of the court on this subject and establish the law upon what I believe to be a just basis, and upon a basis which my Brethren, I really believe, think it ought to rest upon. As I understand, they reach their conclusion only because of the binding force of the statute, which they feel they have no power to construe as I have.