REEVES *v.* LOWE.

Jan. 21, 1952.

No. 38117 (56 So. (2d) 475)

Parker & Williamson and **W. L. Clayton,** for appellants.

Wilbourn & Wilbourn, for appellee.

**Roberds, J.**

The question for decision on this appeal is whether an adopted child inherits from a sister of the adopting parent where the parent predeceases the sister. The question has not been decided in this State. It arises under these circumstances:

On October 23, 1917, S. C. Carroll, and his wife, Laura S. Carroll, adopted appellee through the Chancery Court of Jones County, Mississippi. The petition for adoption is not in the record but the decree of adoption recites that the petitioners "propose that the said minor shall be adopted as their child and shall inherit from either or both of them the same as if she were their own child." The decree then grants the petition for adoption.

Later, Mr. Carroll died and his wife married J. M. Lowe. On October 20, 1947, Mrs. Lowe departed this life intestate, leaving as her heirs her husband and ap-

pellee, the adopted child. Mrs. Lowe was the owner of a one-half undivided interest in a lot in Meridian, the subject of this lawsuit, and her sister, Miss Dora Davis, owned the other one-half undivided interest.

On May 26, 1948, Miss Dora Davis died intestate, leaving as her nearest of kin a number of first cousins. Thereafter, Mr. Lowe conveyed his one-fourth interest in said lot to appellee, whereby appellee became the owner of a one-half undivided interest in the lot.

Appellant filed the bill in this cause, asserting that she was the owner of the entire interest in the lot, one-fourth by virtue of inheritance from her adopting mother, one-fourth by virtue of the deed to her from Lowe and one-half as heir of Miss Dora Davis as against the first cousins, the next of blood kin, of Miss Davis. These first cousins were made defendants to the bill, as well as any other persons who might have or claim an interest in the property. If appellee, as the adopted daughter of Mrs. Laura Carroll (later Mrs. Lowe) inherits from Miss Davis, the sister of Mrs. Lowe, then appellee is the sole owner of the lot; if she does not inherit, she has a half interest, and appellants own the other one-half interest. The chancellor decided in favor of complainant-appellee, and the defendants appeal.

The Mississippi adopting statute, at the time of the adoption of appellee and now, provides: "* * * the petitioner shall also state in the petition what gifts, grants, bequests or benefits he proposes to make or confer, if any, upon the person sought to be adopted." Section 542, Code 1906; Section 1269, Code 1942.

The statute itself does not confer any property or inheritability rights whatever upon the adopted child. It simply empowers the chancery court to grant the adoption. The property rights or material benefits vested by the proceeding must be set out in the petition for adoption. Of course, the proposal of petitioner to confer property benefits, or his failure so to do, would naturally influence the chancellor in the exercise of his

decision to grant or refuse the adoption. But the gifts, grants, bequests and benefits conferred upon the child proposed to be adopted depend entirely upon the proposal in the petition and the decree granting the adoption. The statute itself confers none. It, therefore, follows that the adopted child acquires no right of heirship from the adopting parent where the petition and decree of adoption do not vest such right. Beaver v. Crump, 76 Miss. 34, 23 So. 432; Fisher v. Browning, 107 Miss. 729, 66 So. 132; Leonard v. H. Weston Lumber Company, 107 Miss. 345, 65 So. 459; Whitman v. Whitman, 206 Miss. 838, 41 So. (2d) 22. Many of the states do have statutes defining property and inheritable rights of the adopted child, Anno. 120 A. L. R. 837, and naturally such statutes are usually more favorable to the child than is our procedure, where the extent of such right is dependent upon, and fixed by, the chancery proceeding and not by a statute. Beaver v. Crump, supra. However, in the case at bar the decree provided that appellee should inherit from the adopting mother as her ''own child'', which had the same effect as though the statute had so provided. The question then recurs whether appellee is an heir of the sister of her adopting mother where the mother predeceased the sister?

The Florida Supreme Court recently passed upon this question, one of first impression in that State, and held that such adopted child did not so inherit. In re Hewett's Estate, 153 Fla. 137, 13 So. (2d) 904, 905. The case is in all substantial respects the same as the case at bar. The principal difference is that Florida has a statute making every adopted child an heir-at-law and, for the purpose of inheritance, a lineal descendant of the adopting parent. Every adopted child, regardless of the wishes or proposals of the petitioner, is therefore an heir of the adopting parent, whereas in this State a child may be adopted without any property rights or heirship being conferred upon the child, the decree of adoption merely creating as between the parties the domestic

status of parent and child, with the reciprocal duties and responsibilities of parent and child. In the Hewett case, as in the case at bar, the question was whether an adopted child inherited from a collateral relative of the adopting parent where such parent predeceased the collateral relative. The Court in that case put the question in this form: "Is the adopted daughter of William B. Colwell, the deceased first cousin of William B. Hewett, entitled to share in the estate of William B. Hewett to the same extent that her adopted father would have shared had he been living at the time of William B. Hewett's death?", which is the exact question in the case under consideration. The opinion in that case discussed fully the principles applicable to the questions involved in the case at bar, and the holdings of other courts upon those questions. The case is in point here, and we quote from it at length:

"In the light of the facts of this case the controlling question might be briefly stated in these words: Is the adopted daughter of William B. Colwell, the deceased first cousin of William B. Hewett, entitled to share in the estate of William B. Hewett to the same extent that her adoptive father would have shared had he been living at the time of William B. Hewett's death?

"(1) Our old adoption statute (ch. 3594, Acts of 1885, sections 5076-5081, C. G. L., sections 72.01 to 72.06, Fla. Stats. 1941, F. S. A. Sections 72.01 to 72.06) contains a provision to the effect that any child adopted thereunder 'shall be declared the child and heir at law of the person applying for his adoption.' The same rule was made to apply to a child legally adopted in another state. Sec. 5488, C. G. L. The Probate Act of 1933, section 31, now appearing as section 731.30, Fla. Stats. 1941, F. S. A. Section 731.30, being the last expression of the legislative will, is controlling here. It reads as follows:

"'Adopted child.—An adopted child, whether adopted under the laws of Florida or any other state or country, shall be an heir at law and for the purpose of inheritance

be regarded as a lineal descendent of its adopting parents and the adopting parents shall inherit from the adopted child. Such adopted child shall inherit the estate of its blood parents, but such blood parents shall not inherit from such adopted child.'

"Section 24, subsection 6 (b), of the Probate Act of 1933, being subsection 6 (b) of section 731.23 of Fla. Stats. 1941, F. S. A. Section 731. 23, reads:

"Order of succession.—The real and personal property of an intestate shall descend and be distributed as follows: * * *

" '6 (b) If there be no grandfather or grandmother, to the uncles and aunts and the descendants of such of them as may be deceased.'

"William B. Colwell, the adoptive father of claimant Lila Colwell, was the son of a deceased aunt of William B. Hewett, and admittedly a 'descendant' of such aunt within the plain meaning of the statute. The question here is whether upon the death of Hewett, William B. Colwell's adopted daughter, he having predeceased William B. Hewett, was also a 'descendant' of Hewett's deceased aunt. Manifestly she was not, unless section 31 of the Probate Act, now section 731.30 of Fla. Stats. 1941, F. S. A., Section 731.30, made her so.

"(2) That section of the statute provides that an adopted child 'shall be an heir at law and for the purpose of inheritance be regarded as a lineal descendant of *its adopting parents,*' etc. (Emphasis supplied.) So the statute does not *expressly* make the adopted child the heir at law or lineal descendant of the *ancestors or blood kindred* of the adoptive parents. Can we reasonably hold that it impliedly does so? We think not.

"(3) It is argued that an adopted child could not 'for the purpose of inheritance be regarded as a lineal descendant of its adopting parents' without also being regarded as the lineal descendant of its adopting parents' ancestors, but the statute says nothing about the adopting parents' ancestors and we cannot add anything to the

statute which is not expressly stated therein or which is not necessarily implied by the language used. Can it be said that the implication contended for is necessarily and reasonably implied from the language used?

"(4) The learned Circuit Judge thought so. His view was that the above quoted section 31 of the Probate Act, insofar as an adopted child is concerned, was a legislative definition of the word 'descendants' as used in paragraph 6, subsection (b), and wherever such word appeared in said section 24, thus placing an adopted child in exactly the same position for purposes of inheritance as a natural child would have occupied. He also called attention to the fact that the words 'for the purpose of inheritance' are not qualified by any such words as from 'its adopting parents.' But that the word 'inheritance' is used in an unrestricted sense. We agree that sections 24 and 31 (731.23 and 731.30, Fla. Stats. 1941, F. S. A. sections 731.23, 731.30) should be construed in pari materia, but those provisions of section 24 (the general statute of descents and distributions) which limit the distribution of inheritances to 'descendants' must not be changed by anything contained in section 31 except insofar as the language of that section either expressly or by necessary implication requires. We think that the use of the words, 'and for the purpose of inheritance be regarded as a lineal descendant of its adopting parents' might well have been prompted by the words immediately following, which are, 'and the adopting parents shall inherit from the adopted child', which would only be appropriate if the child be regarded 'as a lineal descendant of its adopting parents.' This purpose is further shown by the next sentence, which provides that while the adopted child shall also inherit from its blood parents, the 'blood parents shall not inherit from such adopted child.' We might well say that what the leglislature mainly had in mind in drafting this section was the extent and quality of an adopted child's inheritance from both its adopting parents and its natural parents, and the reciprocal right

of inheritance from the adopted child—which latter right was given exclusively to the adopting parents, just the same as if the adopted child were 'for the purpose of inheritance' regarded 'as the lineal descendant of its adopting parents', which adopting parents assume the burden and legal duty of raising, training, educating and supporting the adopted child, and thus relieving the blood parents of this burden and expense.

"(5, 6) This statute is very liberal in its provisions in behalf of the adopted child. Such child inherits from its adopting parents as if it were their own natural child, and likewise inherits from its natural parents. Why should the legislature be *construed* to have gone further and intended, by court-imposed implication, to give the adopted child the right to inherit from the adopting parents' ancestors or other blood kin? The legislature should not be construed to have intended this unless the language of the statute makes it plain that such was the legislative intent—which we do not think it does. The statute says: 'An adopted child * * *' shall be an heir at law, and for the purpose of inheritance be regarded as a lineal descendant of *its adopting parents* * * *.' So the words 'heir at law' and 'for the purpose of inheritance be regarded as a lineal descendant' are all limited and qualified by the words 'of its adopting parents.' We would be going too far if we should expand the language of this sentence to read: 'of its adopting parents and their ancestors.'

"(7, 8) Statutes of descent or succession usually place emphasis upon kinship as established by the blood stream—hence the frequent use of the word 'descendants' in our own statute of descents and distributions, now section 731.23, Fla. Stats. 1941, F. S. A. Section 731.23. The word 'descendants' connotes those persons who are in the blood stream of the ancestor. And when strangers to the blood come into the family by legal adoption they have only such rights of inheritance as are given them by statute.

"A descendant, says Webster, is one who descends, 'as offspring, however remotely'. The Century Dictionary defines the word as 'an individual proceeding from an ancestor in any degree, issue; offspring, near or remote,' and Worcester says it means 'the offspring of an ancestor; progeny.' See Words and Phrases, Permanent Edition, vol. 12, p.[age] 220.

"In 1 Am. Jur. 662, Sec. 63, it is said 'The right of an adopted child to inherit as an heir of the relatives or descendants of the adoptive parents depends entirely upon statutory or constitutional provisions. And while these statutes, though similar, have not received a uniform construction, yet it is the general view that there is not conferred upon the child a right to inherit from the lineal or collateral kindred of the adoptive parent unless the language of the statutes is clearly to that effect.'

"See also 2 C. J. S., Adoption of Children, Section 63, p[age] 455, and a very comprehensive review of the decisions in an annotation in 38 A. L. R., beginning at page 8. This annotation follows an interesting opinion in the case of In re Estate of Bradley, 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1. In that case it was held that a statute which interrupts the natural course of the descent of property should be strictly construed.

"In Warren v. Prescott, 84 Me. 483, 24 A. 948, 17 L. R. A. 435, 30 Am. St. Rep. 370, the court went so far as to hold that, although by adoption the adopters can make for themselves an heir, they cannot thus make one for their kindred. And in Merritt v. Morton, 143 Ky. 133, 136 S. W. 133, 33 L. R. A., N. S., 139, it was held as the adopted child's right to inherit rested upon contract, only those who were parties to the contract are bound by it.

"One of the general lines of reasoning upon which many of the decisions are based is expressed in Phillips v. McConica, 59 Ohio St. 1, 9, 51 N. E. 445, 447, 69 Am. St. Rep. 753, as follows:

" 'The ancestors of the adopter are presumed to know their relatives by blood, and to have them in mind in the distribution of their estates, either by will or descent, but they cannot be expected to keep informed as to adoption proceedings in the probate courts of the counties of this state; and to allow an adopted child to inherit from the ancestors of the adopter would often put property into the hands of unheard of adopted children, contrary to the wishes and expectations of such ancestors.'

"See also, on this general question, the opinion of Justice Lamm in Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, 8 L. R. A., N. S., 117, 118 Am. St. Rep. 672, 9 Ann. Cas. 775, a very scholarly historical treatment of this subject of adoption and its effect on the general laws of descent and distribution; also Helms, Adm'r v. Elliott, 89 Tenn. 446, 14 S. W. 930, 10 L. R. .A. 535; Shoemaker v. Newman, 62 App. D. C. 120, 65 F. (2d) 208, 89 A. L. R. 1034; Kettell v. Baxter, 50 Misc. 428, 100 N. Y. S. 529 (cited and quoted from an annotation in 38 A. L. R., p. 9, wherein many other cases are reviewed).

"(9) It will have been noted from the statement of facts herein that William Colwell, the adoptive parent of Lila Colwell, never did have any interest in the estate of William Hewett, having died prior to Hewett's death. So it is that if Lila Colwell is to have a share in Hewett's estate, she can only acquire it upon the theory that she is a *descendant* of Thankful Hewett Colwell, the deceased aunt of Hewett and who had departed this life before Hewett died. As above indicated the applicable provisions of our Florida statutes do not support this theory. They do recognize the relationship of father and daughter, set up by the adoption proceedings, between William Colwell and Lila Colwell, but they do not make Lila Colwell the granddaughter of Thankful Hewett Colwell, to whom she was entirely unrelated. But by this decision of the case Lila Colwell is losing nothing, since neither she nor her adoptive father, nor her adoptive father's

mother, ever had any interest in William B. Hewett's estate, both of the latter having predeceased him.

"For these reasons, the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with the above opinion."

We adopt the principles announced in that decision, which are supported by the authorities cited therein. In addition, as bearing upon the principles discussed therein, see Bradley v. Tweedy, 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1; Harrington v. Harrington, 96 Utah 252, 85 P. (2d) 630, 120 A. L. R. 830 and Anno. p. 837.

But appellee says "* * * that the judicial act of the Chancery Court of Jones County which made appellee a descendant of Mrs. Lowe so that she could inherit directly from her also made her a descendant of Mrs. Lowe so that she could inherit from Miss Dora Davis by representation of Mrs. Lowe." The decree of adoption vested in appellee the right to "inherit from either or both" of the adopting parents. It did not undertake or purport to extend that right to a collateral kin of the adopting parents. Certainly we cannot so enlarge upon the right. The same question was involved in the Hewett case, supra, where the statute itself vested the right in the adopted child to inherit from the adopting parent. The context in Section 468, Code 1942, governing the descent of land, clearly shows that the word "descendants" used in that section means blood descendants.

Appellee, the adopted child, did not inherit from Miss Dora Davis, a sister of Mrs. Lowe, the adopting mother, who predeceased Miss Davis.

Reversed and remanded for further proceedings not inconsistent with this opinion.

**Alexander, Hall, Holmes** and **Arrington, JJ.**, concur.